1 of 1 DOCUMENT

**WAHEED SALEH, Plaintiff, -against- THE CITY OF NEW YORK, KEVIN NICHOLSON, KISHON HICKMAN, and JOHN DOES I-II, Defendants.**

**06 Civ. 1007 (SHS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2007 U.S. Dist. LEXIS 92193*

**December 17, 2007, Decided
December 17, 2007, Filed**

**COUNSEL:** [*1] For Waheed Saleh, Plaintiff: Barry Howard Goldstein, Joseph Daniel Keller, Mark Scott Germann, LEAD ATTORNEYS, O'Melveny & Myers LLP, New York, NY; Kenneth Kimerling, Tushar Jasvant Sheth, LEAD ATTORNEYS, Asian American Legal Defense, Flushing, NY.

For The City of New York, Kevin Nicholson, Kishon Hickman, Defendants: Jennifer Amy Rossan, NYC Law Dept. Off. of the Corporation Counsel (Bklyn), Brooklyn, NY.

**JUDGES:** Sidney H. Stein, U.S.D.J.

**OPINION BY:** Sidney H. Stein

**OPINION**

SIDNEY H. STEIN, U.S. District Judge.

Plaintiff Waheed Saleh brings this action pursuant to *42 U.S.C. § 1983*, alleging that defendants -- the City of New York and four law enforcement officers -- deprived him of his right to petition the government for a redress of grievances in violation of the *First Amendment to the U.S. Constitution*. Defendants now move pursuant to *Rule 56 of the Federal Rules of Civil Procedure* for summary judgment in their favor. Because Saleh's retaliation claim against the individual officers cannot be resolved as a matter of law based on the evidentiary record before this Court, defendants' motion is denied with respect to the individual defendants. Saleh has failed, however, to produce sufficient evidence for a jury to [*2] find the City of New York liable for the alleged acts of retaliation; therefore, defendants' motion for summary judgment is granted with respect to the City of New York.

**I. BACKGROUND**

The following facts are undisputed. Waheed Saleh entered the United States on November 24, 2000 and, as a visitor, was authorized to stay in this country for six months. (Defs.' Local Civil Rule 56.1 Statement of Undisputed Facts ("Defs.' 56.1") P 5; Pl.'s Response to Defs.' Local Civil Rule 56.1 Statement of Undisputed Facts ("Pl.'s 56.1") P 5.) At the conclusion of that six-month period, however, Saleh did not return to his home country; nor had he obtained permission to remain in the United States. (Defs.' 56.1 P 6; Pl.'s 56.1 P 6.)

Two and one half years later -- on November 25, 2003 -- Police Officer Kishon Hickman of the New York City Police Department ("NYPD") issued Saleh a summons for disorderly conduct. (Defs.' 56.1 P 12; Pl.'s 56.1 P 12.) A subsequent record check indicated that Saleh was the subject of several open warrants, and acting on that information, Hickman arrested him. (Defs.' 56.1 P 13; Pl.'s 56.1 P 13.) Within two weeks, Hickman issued Saleh another summons, this time for double parking. [*3] (Defs.' 56.1 P 14; Pl.'s 56.1 P 14.) [1] Saleh, in turn, lodged a complaint against Hickman with the Civilian Complaint Review Board ("CCRB") on December 19, 2003, alleging essentially that Hickman was harassing him. (Defs.' 56.1 P 15; Pl.'s 56.1 P 15.) Over the course of the next year, Saleh received at least one more summons, for disorderly conduct, from the NYPD. (Defs.' 56.1 PP 17, 19; Pl.'s 56.1 PP 17, 19.)

> 1 Hickman may have issued Saleh a third summons, but the record is unclear on that issue. (See Ex. 1 to Decl. of Joseph D. Keller dated Aug. 10, 2007 at 148-51.)

On December 20, 2004 -- one year after filing the CCRB compliant -- Saleh was arrested for overstaying his visa, and the Bureau of Immigration and Customs

Enforcement ("ICE") placed him in removal proceedings. [2] (Defs.' 56.1 PP 8, 11; Pl.'s 56.1 PP 8, 11.) Thereafter, Saleh continued to file complaints against Hickman, including two with the NYPD Internal Affairs Bureau in June 2005, again alleging harassment by Hickman. (Defs.' 56.1 PP 25-26; Pl.'s 56.1 PP 25-26.)

> 2  The parties dispute whether Saleh was arrested by ICE alone (Defs.' 56.1 P 10) or by ICE in conjunction with the NYPD (Pl.'s 56.1 P 10).

Saleh then commenced [*4] this *section 1983* action in early 2007, alleging that Hickman and three other NYPD officers -- defendants Kevin Nicholson and two officers whose names he does not know -- contacted federal immigration authorities in retaliation for Saleh's filing of the December 19, 2003 CCRB complaint. (Compl. P 26.) Saleh contends that the officers' report of his immigration status violated his rights to freedom of speech and to petition the government secured by the *First Amendment to the U.S. Constitution.* [3] The City of New York is named as a defendant in this action pursuant to the doctrine of municipal liability.

> 3  Saleh also asserted a claim pursuant to the New York State Constitution, but that claim has been withdrawn. (Pl.'s Mem. in Opposition to Summary Judgment at 25.)

After full discovery in this action, defendants now move for summary judgment pursuant to *Fed. R. Civ. P. 56.* They contend that, as a matter of law, (1) Saleh cannot prove the necessary elements of his retaliation claim, (2) the individual defendants are entitled to qualified immunity, and (3) no evidence supports municipal liability.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if the evidence [*5] shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56*; see *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); LaFond v. Gen. Physics Serv. Corp., 50 F.3d 165, 171 (2d Cir. 1995).* An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).* When determining whether a genuine issue of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004);* see also *LaFond, 50 F.3d at 171.*

Nevertheless, the party opposing summary judgment "must offer some hard evidence" in support of its factual assertions. *D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998),* such that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Golden Pac. Bancorp v. F.D.I.C., 375 F.3d 196, 200 (2d Cir. 2004)* (quoting [*6] *Anderson, 477 U.S. at 249*). Evidence that is "merely colorable" or "not significantly probative" is insufficient to prevent a court from granting summary judgment. *Anderson, 477 U.S. at 249-50.* Thus, mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).*

### B. Saleh's Retaliation Claim Does Not Fail as a Matter of Law.

Defendants contend that Saleh cannot prove all the elements of his retaliation claim based on the record in this action. To prevail on a retaliation claim, a plaintiff must show: "'(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004)* (quoting *Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001)*). The parties do not contest the existence of the first element, but the second and third elements are very much in dispute.

Defendants maintain that the second element -- that defendants took adverse action against Saleh -- cannot be established [*7] unless Saleh shows that his speech was actually chilled by the alleged retaliatory act, but Saleh cannot do so, according to defendants, because the factual record unequivocally contradicts such a showing. With respect to the third element, defendants urge two reasons for the Court to find insufficient causation: First, they contend that because probable cause supported reporting Saleh to ICE -- i.e., defendants' reasonable belief that Saleh had overstayed his visa -- a fact-finder is barred from concluding that it was Saleh's filing of the CCRB complaint that caused defendants to report him to ICE. Second, defendants assert that ICE's investigation of Saleh was sufficiently independent of defendants' alleged retaliatory act to break the causal chain.

For the reasons described below, however, this Court does not find that Saleh is barred as a matter of law from proving his retaliation claim at trial, and therefore defendants are not entitled to summary judgment on that basis.

*1. Saleh Need Not Prove That His Speech Was Actually Chilled to Prevail on His Retaliation Claim.*

Case 1:07-cv-04795-NRB    Document 6-4    Filed 07/21/2008    Page 3 of 37

2007 U.S. Dist. LEXIS 92193, *                                                          Page 3

As set forth above, the second element of Saleh's retaliation claim is that defendants took adverse action against [*8] him. See Gill, 389 F.3d at 380. Defendants contend that an act cannot constitute adverse action unless it actually chills plaintiff's speech. Saleh is unable to show that his speech was actually chilled, according to defendants, because, far from being chilled, he in fact continued filing complaints against NYPD officers -- including defendant Hickman -- even after his immigration status was allegedly reported to ICE. Defendants conclude, therefore, that Saleh's retaliation claim must fail as a matter of law.

Saleh disputes defendants' interpretation of the record. Pointing to evidence -- including his own deposition testimony -- that he contends would permit a jury to find that his speech was chilled notwithstanding his post-retaliatory complaints against the NYPD, Saleh frames the issue as a disputed question of fact to be resolved at trial.

This Court, however, need not determine whether Saleh is able to put forth sufficient evidence to show that his speech was actually chilled by defendants' conduct because no such requirement governs his retaliation claim.

In Gill, the U.S. Court of Appeals for the Second Circuit explained that certain retaliation claims -- specifically, claims against [*9] public officials -- call for a "subjective test to gauge both the nature and the extent of the alleged injury," while others -- claims by prisoners -- call for an "objective test without regard for whether the plaintiff himself was actually chilled." 389 F.3d at 381. When a subjective test provides the appropriate standard, a court must conduct an inquiry into whether plaintiff's speech was chilled by the retaliatory conduct. Id. Under the objective test, however, the relevant inquiry is whether the alleged retaliatory conduct "would deter a [person] of ordinary firmness from vindicating his or her constitutional rights," id. at 384, and not whether that particular plaintiff's speech was actually chilled.

The specific question facing the Second Circuit in Gill was whether a prisoner must satisfy a subjective or objective test to prevail on a claim of retaliation for filing an administrative grievance. The court offered three possible rationales in support of its decision to apply an objective standard: First, the court distinguished between retaliation claims alleging punishment for past speech and those complaining of suppression of future speech. The court explained that when [*10] the gravamen of a retaliation action is that the defendant tangibly punished the plaintiff for his speech, an objective standard is warranted. Id. at 382. When the case focuses instead on whether the defendant's actions quelled the plaintiff's inclination to speak again in the future, a subjective standard provides the proper test. Id. Second, the court focused on injury: when the only injury alleged is the chilling of speech itself, a subjective test should govern the claim. An objective test is more appropriate, however, when other, more tangible injuries are also claimed. Id. Third -- and most directly relevant to Saleh's action -- the court observed:

> [W]here a plaintiff alleges that the protected conduct at issue is the prior filing of a grievance or lawsuit against the defendant, it would be unfair in the extreme to rule that plaintiff's bringing of the subsequent claim in itself defeated his claim of retaliation. If bringing the action demonstrates that the plaintiff has not been chilled -- and has failed to meet the subjective test -- then such a plaintiff could never seek redress for retaliation.

Id. at 383. On this basis -- which the court considered its "most narrow approach," [*11] id. at 384 -- an objective standard governs cases where "the plaintiff brings suit based on an allegation that the defendant retaliated for the plaintiff's prior suit or grievance," id. at 383.

All three rationales set forth by Judge Calabresi in Gill support the application of an objective standard here. First, this case is about punishment for past speech, not the inhibition of future speech. The premise of plaintiff's retaliation claim is that defendants alerted federal officials to Saleh's problematic immigration status in an attempt to strike back at him for his having complained about police misconduct. This action centers, therefore, on defendants' alleged retaliatory attempts to punish Saleh for his complaint and not on their attempts to limit Saleh's prospective speech. Accordingly, this consideration points to the application of an objective standard to the claim.

Second, Saleh complains of a tangible injury: ICE commenced removal proceedings against him allegedly as a result of defendants' report to ICE. Because Saleh's claim entails an injury that is not only "the putative chilling itself," id. at 382, the second Gill consideration also supports the application of an objective [*12] test.

The third consideration provides additional -- perhaps the strongest -- ground for adopting an objective standard in this case. If a subjective test governed retaliation claims involving the right to petition the government for a redress of grievances, it would have the perverse effect of barring all such claims. This is so because an individual retaliated against for filing a prior grievance would face a catch-22: he can file a retaliation lawsuit, demonstrating that his right to petition the government

has not, in fact, been chilled, and thereby defeat his claim; or he can prove actual chilling -- and thereby preserve his right to sue -- only so long as he does not file suit. See *id. at 383; Lashley v. Wakefield, 367 F. Supp. 2d 461, 467 (W.D.N.Y. 2005); Walker v. Pataro, No. 99 Civ. 4607, 2002 U.S. Dist. LEXIS 7067, at *30 (S.D.N.Y. Apr. 23, 2002).* Under this regime, a retaliation lawsuit such as Saleh's is self-defeating because its very existence runs athwart of the subjective test for adverse action. An objective standard, then, provides the only workable means of determining whether a defendant's conduct constitutes adverse action in retaliation suits premised on a violation [*13] of the right to petition the government.

Having examined Saleh's retaliation claim pursuant to the three rationales presented by the Second Circuit in Gill, this Court concludes that an objective standard governs the question of whether defendants' alleged conduct constitutes adverse action. Under this standard, Saleh must show that the alleged retaliatory conduct "would deter a [person] of ordinary firmness from vindicating his or her constitutional rights," *Gill, 389 F.3d at 384,* and need not prove that his exercise of his *First Amendment* right to petition the government was actually chilled by defendants' conduct. Therefore, defendants are not entitled to summary judgment on the basis of Saleh's purported inability to show actual chilling.

*2. The Existence of Probable Cause Has No Bearing on Saleh's Retaliation Claim.*

Defendants also contend that the rule announced by the U.S. Supreme Court in *Hartman v. Moore, 547 U.S. 250, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006),* bars Saleh's claim. In Hartman, the Supreme Court held that plaintiffs cannot establish causation in retaliatory prosecution actions unless they can allege and prove the absence of probable cause. *Id. at 265-66.* Defendants [*14] contend that Saleh cannot prove the absence of probable cause for the removal proceedings initiated against him, and therefore, his retaliation claim fails to satisfy the requirement set forth by the Hartman Court.

Defendants misread *Hartman* -- or Saleh's complaint -- as neither the holding nor the reasoning of that decision governs Saleh's claim. By its terms, the holding in *Hartman* applies only to retaliatory prosecution claims. *Id. at 265.* Saleh, however, has not filed a claim for retaliatory prosecution; indeed, he has not even filed a claim for "retaliatory removal," which would perhaps present a closer question of whether Hartman governed this case. Saleh contends instead that the defendants reported his immigration status to ICE to punish him for filing a grievance against Officer Hickman. Thus, Saleh does not allege that he has been prosecuted in retaliation for his CCRB report; he alleges only that defendants

lodged a retaliatory report against him with ICE. His claim, therefore, does not entail a retaliatory prosecution or any similar proceeding and for that reason, does not fall squarely within the scope of *Hartman.*

Nor does the Supreme Court's rationale in *Hartman* suggest [*15] that this Court impose here the requirement that the absence of probable cause be alleged and proven. Recognizing the "complexity of causation" presented by retaliatory prosecution claims, *id. at 265,* the Supreme Court observed, "[s]ome sort of allegation, then, is needed both to bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity," *id. at 263.* The problems posed by retaliatory prosecution claims, according to the Supreme Court, are two-fold: first, the retaliatory animus of the non-prosecuting defendant must be linked to the presumably independent acts of the prosecutor, who is immune from liability for the decision to prosecute; and second, plaintiffs must overcome the "longstanding presumption of regularity accorded to prosecutorial decisionmaking." *Id. at 262-63.*

Neither of these concerns is implicated by Saleh's claim. First, the retaliatory animus and retaliatory act at issue here are both attributable to the same defendants -- the policemen -- and therefore this case does not raise the difficulty of connecting "the retaliatory animus of one person and the action of another." [*16] *Id. at 262.* Second, Saleh's claim does not challenge the presumption of prosecutorial regularity because the claim turns on the motive animating defendants' alleged report of Saleh's immigration status to ICE, and not the legitimacy of any prosecutorial decision-making. Accordingly, the rationale supporting the *Hartman* decision does not encompass Saleh's retaliation claim.

Because retaliatory prosecution claims pose unique difficulties that are absent from this case, *Hartman's* requirement that a lack of probable cause be shown does not apply to Saleh's claim and therefore provides no basis to grant summary judgment in defendants' favor. [4]

> 4    Even if the existence of probable cause could defeat Saleh's claim, defendants have not shown that probable cause supported their report to ICE. See infra Part II.C.

*3. The Actions of ICE Do Not Break the Chain of Causation.*

For similar reasons, the Court finds that the independent acts of ICE do not disrupt the chain of causation that Saleh must establish to prove retaliation. Defendants contend that the decision to initiate removal proceedings was made independently by ICE and therefore cannot be attributed to defendants' conduct. In support of their

[*17] position, defendants rely on *Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999)*, in which the Second Circuit observed, "It is well settled that the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment."

As discussed above, however, Saleh does not contend that the commencement of removal proceedings against him constitutes the adverse action at issue in this case. Instead, Saleh bases his retaliation claim on defendants' alleged report to ICE, and therefore must establish a causal connection between his protected speech -- filing the CCRB complaint against Hickman -- and the alleged adverse action -- defendants' report of his immigration status to ICE. See *Gill, 389 F.3d at 380*; cf. *Contreras v. Corinthian Vigor Ins. Brokerage, 103 F. Supp. 2d 1180, 1186 (N.D. Cal. 2000)* ("[R]eport[s] to the INS or the SSA of a former employee's undocumented status . . . constitute adverse actions under the [Fair Labor Standards Act]."). With respect to this causal connection, ICE's decision to commence removal proceedings against Saleh is irrelevant. Because it has no bearing [*18] on Saleh's ability to prove proximate cause in this action, ICE's independent decision to commence removal proceedings does not entitle defendants to summary judgment.

C. Defendants Are Not Entitled to Qualified Immunity.

The individual defendants also invoke qualified immunity in an attempt to defeat Saleh's retaliation claim. They contend that no reasonable NYPD officer could have known, based on contemporaneous caselaw, that the U.S. Constitution barred reporting an alien to ICE in retaliation for filing a police misconduct complaint. That contention is unpersuasive.

Qualified immunity shields governmental actors "'from suits for damages . . . unless their actions violate clearly-established rights of which an objectively reasonable official would have known.'" *Zieper v. Metzinger, 474 F.3d 60, 67 (2d Cir. 2007)* (quoting *Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999)*) (alteration in original). To determine whether a defendant can avail himself of qualified immunity, a court must engage in a two-step inquiry. First, it must "determine whether the facts alleged, taken most favorably to plaintiffs, demonstrate a violation of a constitutional right." *Id. at 67*. Second, the court examines [*19] "whether the defendants' actions violated clearly established constitutional rights of which a reasonable person would have known." *Id.*

Having conceded the first inquiry for the purpose of their qualified immunity analysis, defendants urge that (1) Saleh's right to be free of retaliation under the circumstances of this case was not clearly established and,

in the alternative, (2) no reasonable police officer would have known of such a right.

*1. The Existence of Probable Cause Is Relevant Only to the Right to Be Free of Retaliatory Arrests and Prosecutions.*

Defendants contend that Saleh had no clearly established constitutional right to be free of the type of retaliation at issue in this case because Second Circuit law permits police officers to retaliate so long as they have probable cause for their retaliatory acts. In support of this position, defendants rely on *Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001)*, in which the Second Circuit held that the existence of probable cause eviscerates a retaliatory arrest claim. Defendants maintain that because they had probable cause to suspect that Saleh had violated federal immigration laws, they could report him to ICE in retaliation [*20] for filing a CCRB complaint without violating the Constitution. Their position here is similar to their argument based on the Supreme Court's *Hartman* decision, which addressed retaliatory prosecution rather than retaliatory arrest; and it fails for the same reasons.

The absence of probable cause is required in retaliatory prosecution and retaliatory arrest claims because of the causal difficulties inherent in proving such claims. See *Hartman, 547 U.S. at 265*. As noted above, the presumption of prosecutorial regularity militates strongly against an inquiry into subjective motive when probable cause justifies an arrest or a prosecution, and as a result, "[a]n individual does not have a right under the *First Amendment* to be free from a criminal prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government." *Mozzochi v. Borden, 959 F.2d 1174, 1180 (2d Cir. 1992)*. This rule applies, however, only to claims of retaliatory arrest and prosecution. It does not afford police officers license to retaliate against the public in any manner they choose so long as probable cause supports their retaliatory acts.

The reason that the [*21] absence of probable cause is required for claims of retaliatory arrest and prosecution, but not for other retaliation claims, is that the presumption of prosecutorial regularity attaches to arrests and prosecutions, but not necessarily to other police conduct. Making arrests and conducting prosecutions are core duties of law enforcement, and both functions entail the exercise of considerable discretion. In light of the discretion entrusted to law enforcement officers, "courts presume that they have properly discharged their official duties." *United States v. Armstrong, 517 U.S. 456, 465, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996)*. Activity beyond these "official duties," however, entails no such presumption. In *Kerman v. City of New York, 261 F.3d*

*229, 242 (2d Cir. 2001)*, for example, the Second Circuit did not require a plaintiff complaining of police retaliation in the form of an "involuntary overnight trip to Bellevue [Hospital]" to prove the absence of probable cause for that hospitalization. Instead, the case called for a "subjective motivation analysis" into the officer's "state of mind" to determine whether the plaintiff was hospitalized in retaliation for his criticism of the **[*22]** police. *Id.*

Similarly, no presumption of regularity applies here because, unlike making arrests and facilitating prosecutions, NYPD officers do not report the immigration status of individuals they encounter to ICE as part of their regular duties. First, NYPD officers are not charged with enforcing the nation's immigration laws. *Section 3-02(b)of Title 43 of the Rules of the City of New York* ("RCNY") states:

> Each agency shall designate one or more officers or employees who shall be responsible for receiving reports from such agency's line workers on aliens suspected of criminal activity and for determining, on a case by case basis, what action, if any, to take on such reports. No such determination shall be made by any line worker, nor shall any line worker transmit information respecting any alien directly to federal immigration authorities.

A "line worker," defined as "a person employed by any City agency whose duties involve contact with the public," *43 RCNY § 3-01*, encompasses each defendant NYPD officer in this case.

Second, Saleh offers strong evidence that Hickman and Nicholson had never before contacted ICE under circumstances similar to those at issue in this case. (See Decl. **[*23]** of Joseph D. Keller ("Keller Decl.") dated Aug. 10, 2007, Ex. 2 (Hickman Tr.) at 123, 144-45; Ex. 3 (Nicholson Tr.) at 74; Ex. 4 (Doepfner Tr.) at 72.) Unlike arrests and prosecutions, contacting ICE is not among the regular, routine functions of the NYPD or even of the defendant officers themselves. Accordingly, there is no reason to impose an absence of probable cause element here, and defendants cannot rely on the existence of probable cause to excuse a retaliatory report to ICE.

Even if the existence of probable cause blocked Saleh's claim, defendants have not shown that probable cause to support a report to ICE existed here, based on the undisputed facts of this case. Defendants contend that because Saleh was, in fact, unauthorized to remain in the United States, they had probable cause to report him to ICE. (Defs.' Mem. at 8-9, Defs.' Reply at 19-20.) Probable cause, however, does not depend on whether defendants were ultimately right about Saleh's immigration status; rather it requires a showing that defendants had "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that" Saleh **[*24]** was in the United States unlawfully. *Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003)* (internal quotation marks omitted). Defendants advance, however, only conclusory and post-hoc representations that probable cause existed. They do not even attempt to set forth what "trustworthy information" gave rise to their belief that Saleh was in the United States illegally. Accordingly, defendants have not shown, based on the undisputed facts of this case, that probable cause supported a report of Saleh's immigration status to ICE. [5]

> 5    To the extent that defendants base probable cause on a voluntary admission by Saleh of his immigration status (see Keller Decl., Ex. 3 (Nicholson Tr.) at 10), Saleh denies that the admission occurred (see Keller Decl., Ex. 1 (Saleh Tr.) at 256), raising a factual issue for trial.

*2. A Reasonable Officer Would Have Known that Reporting Saleh to ICE in Retaliation for Filing a Police-Misconduct Complaint Violated the Constitution.*

Turning to defendants' second proposition -- that no reasonable person would have known that reporting Saleh to ICE violated the Constitution -- the Court rejects that contention as well. The Second Circuit has explained that "defendants **[*25]** are entitled to qualified immunity if it would not have been clear to a reasonable officer in their position that their conduct was unlawful." *Zieper, 474 F.3d at 68.* Defendants urge that a reasonable NYPD officer would have no reason to believe that alerting ICE to the presence of illegal aliens constitutes a constitutional violation. By so framing the issue, however, defendants miss the point. This case is not about whether NYPD officers can alert ICE when they encounter illegal aliens, but whether they can retaliate against individuals who file police-misconduct grievances by making referrals to ICE.

With respect to such retaliation, the law is clear: "[t]he rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment." *Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994).* When officials take adverse action against those who exercise this right, they can be held liable for a constitutional violation. *Id. at 194-95.* A defendant's ability to justify the purported adverse action on non-retaliatory grounds is irrelevant because "'[a]n act in retaliation for the exercise of a constitutional right is actionable **[*26]** under *section 1983*

Case 1:07-cv-04795-NRB    Document 6-4    Filed 07/21/2008    Page 7 of 37

2007 U.S. Dist. LEXIS 92193, *                                      Page 7

even if the act, when taken for different reasons, would have been proper.'" *Franco v. Kelly, 854 F.2d 584, 590 (2d Cir. 1988)* (quoting *Howland v. Kilquist, 833 F.2d 639, 644 (7th Cir. 1987)*); see also *Kerman, 261 F.3d at 242 (section 1983* claim against police officers can be based on "involuntary overnight trip to Bellevue" Hospital in retaliation for exercising *First Amendment* rights).

Accordingly, it may be sound practice for NYPD officers to alert ICE when they encounter unlawful aliens under normal circumstances, but when they do so for retaliatory purposes, they run afoul of the Constitution. [6] In light of this firmly established law, it would have been clear to a reasonable officer that reporting Saleh to ICE in retaliation for filing a CCRB complaint violated the *First Amendment to the Constitution.* Accordingly, the individual defendants are not entitled to qualified immunity. [7]

> 6   In an analogous scenario involving retaliation for union activity, the Supreme Court explained, "It is only when the evidence establishes that the reporting of the presence of an illegal alien employee is in retaliation for the employee's protected union activity that the [National **[*27]** Labor Relations] Board finds a violation of *§ 8(a)(3)* [of the National Labor Relations Act]. Absent this specific finding of antiunion animus, it would not be an unfair labor practice to report or discharge an undocumented alien employee." *Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 895-96. 104 S. Ct. 2803, 81 L. Ed. 2d 732 (1984).*
>
> 7   Whether defendants actually reported Saleh to ICE and whether retaliatory animus motivated defendants' alleged report remain contested factual questions to be resolved at trial. The Court takes no position on such disputed issues of fact. Indeed, those facts will constitute the core of any trial.

**D. Saleh Has Not Identified Sufficient Evidence to Support a Finding of Municipal Liability.**

Saleh seeks to impose liability on the City of New York for failing to train NYPD officers -- including defendants Hickman and Nicholson -- to respect the rights of immigrants. Inadequate police training "'may serve as the basis for *§ 1983* liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Jenkins v. City of New York, 478 F.3d 76, 94 (2d Cir. 2007)* (quoting *City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).* **[*28]** In order to prove that New York City's failure to train constitutes deliberate indifference, Saleh must satisfy three requirements:

First, the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation. Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.

*Id. at 94* (internal citations and quotation marks omitted).

To defeat summary judgment, "plaintiffs must 'identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.'" *Id.* (quoting *Green v. City of New York, 465 F.3d 65, 81 (2d Cir. 2006)).* Saleh, however, has failed to identify any deficiency in training that is "closely related" to his constitutional injury. He has brought forth no evidence whatsoever showing **[*29]** that the City of New York provides inadequate, flawed or otherwise deficient training on the impermissibility of retaliating against individuals who complain of police misconduct.

Instead, Saleh accuses the city of failing to train NYPD officers regarding proper procedures for interacting with immigrants. As discussed above, however, this is not a case about immigrant relations or NYPD-ICE protocols. This is a retaliation case rooted in Saleh's *First Amendment* right to petition the government for a redress of grievances, and it is of no moment that the retaliatory act in this case came in the form of a report to ICE rather than in some other manner. Were it otherwise, all retaliation training would be deficient unless every conceivable manifestation of adverse action were enumerated and specifically prohibited. The strictures of municipal liability are not so exacting. See *Green, 465 F.3d at 82* (rejecting failure-to-train theory because defendant's guidelines "specifically and clearly informed" personnel of general principle at issue such that defendant did not have "a further training obligation").

Because Saleh has failed to set forth any facts establishing that the retaliation he **[*30]** suffered was a consequence of the city's failure to adequately train its police officers, the City of New York is entitled to summary judgment dismissing Saleh's retaliation claim.

**III. CONCLUSION**

For the reasons stated above, (1) Saleh's retaliation claim cannot be resolved as a matter of law based on the undisputed facts of this case, (2) the individual defendants are not entitled to qualified immunity, and (3) Saleh has failed to identify sufficient evidence to impose liability on the City of New York. Accordingly, defendants' motion for summary judgment of dismissal should be granted as to the City of New York and denied as to the individual defendants.

Dated: New York, New York

December 17, 2007

/s/ Sidney H. Stein

Sidney H. Stein, U.S.D.J.

21 of 34 DOCUMENTS

**CHRISTIAN VOGELER and DEREK J. KIECHLE, Plaintiffs, - against - POLICE OFFICER MICHAEL COLBATH, Defendant.**

**04 Civ. 6071 (LMS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2005 U.S. Dist. LEXIS 44658*

**October 6, 2005, Decided**

**COUNSEL:** [*1] For Christian Vogeler, Derek J. Kiechle, Plaintiffs: John Cobb, Cobb & Cobb, Tuxedo, NY.

For The County Of Rockland, Defendant: Paul Vincent Nowicki, LEAD ATTORNEY, County Attorney's Office of Rockland County, New City, NY.

For Police Officer Michael Colbath, Defendant: Janice Gittelman, LEAD ATTORNEY, Town of Ramapo, Town Attorney, Suffern, NY.

For Parole Officer Freeman, Defendant: Adam I. Kleinberg, LEAD ATTORNEY, Miranda Sokoloff Sambursky Slone Verveniotis LLP, Mineola, NY.

For The County Of Rockland, Cross Claimant: Paul Vincent Nowicki, County Attorney's Office of Rockland County, New City, NY.

For Police Officer Michael Colbath, Cross Defendant: Janice Gittelman, LEAD ATTORNEY, Town of Ramapo, Town Attorney, Suffern, NY.

For Police Officer Michael Colbath, Cross Claimant: Janice Gittelman, Town of Ramapo, Town Attorney, Suffern, NY.

For The County Of Rockland, Cross Defendant: Paul Vincent Nowicki, County Attorney's Office of Rockland County, New City, NY.

**JUDGES:** Lisa Margaret Smith, United States Magistrate Judge.

**OPINION BY:** Lisa Margaret Smith

**OPINION**

**DECISION AND ORDER**

This matter is before me by consent of the parties pursuant to *28 U.S.C. § 636(c)* [*2] . Plaintiffs filed this cause of action pursuant to *42 U.S.C. § 1983* against Rockland County, Town of Ramapo Police Officer Michael Colbath, Village of Spring Valley Police Officer Kevin Freeman, and Unknown Police Officers 1 through 5. In a stipulation agreed upon by the Plaintiffs and Defendant Colbath, the claims against Rockland County and Police Officer Kevin Freeman were dismissed with prejudice. [1] Plaintiffs claim that Defendant arrested them without probable cause, impermissibly searched their persons and conducted a strip search, maliciously prosecuted them, and exerted excessive force during the course of their arrest. Defendant filed a motion for summary judgment pursuant to *Rule 56(b) of the Federal Rules of Civil Procedure* seeking to have all claims against him dismissed. Plaintiffs then filed a cross-motion for summary judgment pursuant to *Rule 56(a)*. For the foregoing reasons, I grant the Defendant's motion for summary judgment in its entirety and dismiss all claims against him. Accordingly, Plaintiffs' cross-motion for summary judgement on all claims is denied.

> 1   See Docket Entry # 40, Stipulation and Order of Discontinuance as to Defendants Rockland County and Police Office Kevin Freeman.

**[*3] BACKGROUND**

The parties do not dispute the following facts that are material to a decision in this case.

On the evening of May 1, 2003, Plaintiffs Christian Vogeler ("Vogeler") and Derek Kiechle ("Kiechle") were inside Room 308 at the Wellesley Inn ("Room 308,") located in Ramapo, NewYork, when the Rockland County Task Force ("Task Force") executed a no-knock

search warrant on Room 308. Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts ("Pls' Statement") at PP 1, 13; Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Def's Statement") at P 12. Defendant Michael Colbath ("Colbath,") as a member of the Town of Ramapo Police Department, worked with the Task Force and was present when the no-knock search warrant was executed. Def's Statement at P 1,7; Plaintiffs' Response to Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Pls' Resp.") at PP 1, 7. The Task Force had been conducting an investigation into allegations of narcotics activity within Room 308. Def's Statement at P 8; Pls' Resp. at P 8. As a part of its investigation, the Task Force had utilized the assistance of a confidential informant, and on two occasions had directed him to [*4] purchase narcotics from "Nino," the suspected dealer, who was then located in Room 308. Def's Statement at P 9; Pls' Resp. at P 9.

On May 1, 2003, the Task Force obtained a search warrant from a Village of Airmont Justice Court Judge for Room 308. Def's Statement at P 10; Pls' Resp. at P 10. The Task Force, including the Defendant, executed the search warrant. Def's Statement at P 12; Pls' Resp. at P 12. Subsequent to execution of the warrant, Plaintiffs Vogeler and Kiechle, along with "Nino," the suspected dealer, were arrested. Def's Statement at P 19; Pls' Resp. at P 19. Plaintiffs were handcuffed, placed face-down on the floor, frisked and searched. Pls' Statement at P 16; Defendant's Response to Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts ("Def's Resp.") at P 16. While no illegal substances were recovered from the Plaintiffs' persons, Pls' Statement at P 23; Def's Resp. at P 23, the Task Force seized and removed from the room nine clear bags containing a white powder, subsequently identified as cocaine, nine clear bags containing a green leafy substance, later identified as marijuana, an additional sandwich bag containing marijuana, an electronic scale, numerous [*5] empty clear zip lock bags, and a sizable amount of U.S. currency. Def's Statement at P 17; Pls' Resp. at P 17.

Plaintiffs were charged with Criminal Possession of a Controlled Substance in the Third Degree, *N.Y. PENAL LAW § 220.16(1)* (Consol. 2005), and Unlawful Possession of Marijuana, *N.Y. PENAL LAW § 221.05* (Consol. 2005). Pls' Statement at P 25; Def's Resp. at P 25. After additional investigation, the District Attorney dismissed the charges. Pls' Statement at P 27; Def's Resp. at P 27. Plaintiffs then initiated this cause of action against the Defendants for false arrest and false imprisonment, illegal search and seizure, malicious prosecution and use of excessive force during the course of arrest.

## DISCUSSION

### A. Introduction

Plaintiffs assert that Defendant Colbath violated their *Fourth Amendment* rights to be free from false arrest and false imprisonment, to be free from unreasonable searches and seizures, to be free from malicious prosecution, and to be free from excessive force by the police when making an arrest. Plaintiffs' Complaint ("Pls' Compl.") at P 15. The Defendant moves for summary judgment on [*6] the first three claims as he had probable cause to arrest the Plaintiffs and therefore cannot be liable. Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def's Mem.") at 1. The Defendant also seeks summary judgment on the Plaintiffs' claim of excessive force as there is no evidence in the record indicating that it was the Defendant who lifted the Plaintiffs from the ground. Def's Mem. at 6. Defendant seeks summary judgment on this claim on the separate ground that any force exerted during the arrest was reasonable, and thus he is entitled to summary judgment as a matter of law. Id. Lastly, Defendant exerts a broad of claim of qualified immunity insulating him from civil liability for his actions, if any, which may have violated the Plaintiffs' constitutional rights. [2] Id. at 11.

> 2  Although the Defendant invokes the protection of qualified immunity, I need not determine whether he is entitled to its protection because I conclude at no point did he violate the Plaintiffs' constitutional rights. Under the Supreme Court's holding in *Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)*, a court must conduct a two-step analysis when determining whether a police officer is entitled to qualified immunity. A court must first determine whether the defendant violated the plaintiff's constitutional rights. Id. If the court determines that the defendant's actions did not constitute a violation, the qualified immunity analysis ends. Id.

[*7] Because a review of the record in this case indicates that there are no genuine issues of material fact, I hereby grant the Defendant's motion for summary judgment on all claims and deny the Plaintiffs' cross-motion for summary judgment.

### B. Summary Judgment

Under the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *FED. R. CIV. P. 56(c)*; *Celotex Corp. v. Catrett, 477 U.S. 317, 320-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. "Upon any motion for summary judgment pursuant to *Rule 56 of the Federal Rules of Civil Procedure*, there shall be annexed to the notice of motion a

Case 1:07-cv-04795-NRB     Document 6-4     Filed 07/21/2008     Page 11 of 37

Page 3
2005 U.S. Dist. LEXIS 44658, *

separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion." *LOCAL CIV. R. 56.1(a).* **[*8]** A fact is "material" when it may affect the outcome of a case under the governing substantive law. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).* A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. A trial judge may, therefore, grant summary judgment only if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. *Id. at 250.* The inquiry performed is the threshold inquiry of determining whether there are any genuine factual issues that properly can be resolved only by a finder of fact. Id.

Where a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *FED. R. CIV. P. 56.* Under *Local Rule 56.1(b)*, "the papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and **[*9]** concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." *LOCAL CIV. R. 56.1(b).* Summary judgment may be granted only "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'" *Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996)* (quoting *Celotex, 477 U.S. at 323*) (alteration in original). "The nonmoving party must have 'had the opportunity to discover information that is essential to his [or her] opposition' to the motion for summary judgment." *Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989)* (quoting *Anderson, 477 U.S. at 250 n. 5*). Moreover, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." *Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002); Farias v. Instructional Sys., Inc., 259 F.3d 91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998);* **[*10]** see also *Anderson, 477 U.S. at 261 n.2.* Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992)* (quoting *H.L. Hayden Co. v. Siemens Medical Systems, Inc., 879 F.2d 1005, 1011 (2d Cir. 1989)).*

In the present case, a review of the record shows that there is no genuine issue of any material facts and that therefore, the Defendant, the moving party, is entitled to a judgment as a matter of law, *FED. R. CIV. P. 56(c)*, and Plaintiffs' cross-motion for summary judgment must be denied.

## C. Plaintiffs' Causes of Action

### 1. False Arrest and False Imprisonment

To successfully establish a cause of action for false arrest and false imprisonment, each Plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995)* (citations omitted); *Boose v. Rochester, 71 A.D.2d 59, 421 N.Y.S.2d 740, 745 (N.Y. App. Div 1979).* Probable cause is a complete defense to the claims of false arrest and false imprisonment. *Bernard v. U.S., 25 F.3d 98, 102 (2d Cir. 1994).* The burden is on the Defendant to show the existence of probable cause as an affirmative defense. *Broughton v. State of New York, et. al., 37 N.Y.2d 451, 458, 335 N.E.2d 310, 373 N.Y.S.2d 87 (1975).*

Defendant is entitled to summary judgment on the claims of false arrest and false imprisonment because he had probable cause to arrest the Plaintiffs. Under the *Fourth Amendment,* a police officer must have probable cause to arrest an individual without an arrest warrant. *Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964).* A constitutionally valid arrest turns upon whether the police had the requisite "facts and circumstances within their knowledge . . . to warrant a prudent man in believing that the [individual] [has] committed or was committing an offense." Id. It is undisputed that on May 1, 2003, the Defendant entered Room 308 pursuant to a search warrant issued by a Village of Airmont Justice Court Judge. Def's Statement at P 12; Pls' **[*12]** Resp. at P 12. It is also undisputed that the Plaintiffs were present in the room when the search warrant was executed. Def's Statement at P 16; Pls' Resp. at P 16. Once in the room, the Defendant seized several transparent zip lock bags that were identified via field testing as containing cocaine and marijuana, an electronic scale, and a large quantity of U.S. currency. [3] Def's Statement at P 17. Moreover, the Task Force's confidential informant reported that a drug transaction had occurred in Room 308 in the Plaintiffs' presence just prior to the officers' execution of the search warrant. Defendant's Affirmation in Reply and in Opposition to Plaintiffs' Cross-Motion for Summary Judgment ("Def's Opp'n Statement"), Ex. C.

3  The Plaintiffs correctly point out that there is an inconsistency in the Defendant's testimony regarding the location of the currency seized from Room 308. Compare Pls' Statement Ex. 9 at 7 (grand jury testimony of Defendant that U.S. currency recovered from clothing found within Room 308), with Pls' Statement Ex. 15 at P 4 (Defendant's affadavit stating that money recovered from tabletop in corner of Room 308). This discrepancy, however, is of no value to the Plaintiffs because the issue surrounding the currency's location within Room 308 is not a material fact. In order for a fact to be material, and thus meaningful for this court to examine on a motion for summary judgment, the fact must alter or possibly alter the outcome of the case. *Anderson, 477 U.S. at 248.* Immaterial facts have no bearing on this court in deciding a motion for summary judgment. *Celotex Corp, 477 U.S. at 323.*

Moreover, Plaintiff Voegeler's grand jury testimony and Plaintiff Kiechle's depositions are not without inconsistency either. Plaintiff Vogeler claims that Plaintiff Kiechle was driving on the evening of May 1, 2003. See Pls' Statement Ex. 8 at 5, lines 12-14; see also Pls' Statement Ex. 12 at 10-11, lines 25-1. Plaintiff Kiehcle, however, claims Plaintiff Vogeler was driving on the night of May 1, 2003. See Pls' Statement Ex. 11 at 13 lines 16-24. While this inconsistency does not go to a material fact either, it is worth noting that neither Plaintiffs' nor Defendant's statements are wholly consistent.

**[*13]**  The presence of illegal narcotics within Room 308, as well as the information relayed by the confidential informant, gave the Defendant sufficient probable cause to arrest the room's occupants based upon the suspicion that they committed or were committing a criminal offense. See *Beck, 379 U.S. at 91; Provost v. City of Newburgh, 262 F.3d 146, 157 (2d Cir. 2001).* Defendant's motion for summary judgment on the Plaintiffs' claim of false arrest and false imprisonment must be granted therefore, because the Defendant had probable cause to arrest them. *Broughton, 37 N.Y.2d at 458.*

Defendant cites to *N.Y. PENAL LAW § 220.25(2)* (Consol. 2005) as additional support for his argument that he had sufficient probable cause to arrest the Plaintiffs subsequent to the search warrant's execution. *N.Y. PENAL LAW § 220.25(2)* provides, in part,

[t]he presence of a narcotic drug, narcotic preparation, marihuana or phencyclidine in open view in a room, other than a public place, under circumstances evinc-

ing an intent to unlawfully mix, compound, package or otherwise prepare for sale such controlled **[*14]** substance is presumptive evidence of knowing possession thereof by each and every person in close proximity to such controlled substance at the time such controlled substance was found . . . .

New York's statutory constructive possession presumption, however, is subsidiary to the primary establishment of probable cause to arrest the Plaintiffs stemming from the Defendant's seizure of illegal narcotics from the hotel room in which they were located. Thus, the contentions Plaintiffs raise regarding their awareness of narcotics in plain view and their personal proximity to the narcotics are of no issue. [4] The Plaintiffs' presence in Room 308 during an illegal narcotics distribution, as well as their presence in the room when illegal narcotics were seized, provided the requisite probable cause to substantiate their arrest.

4  Plaintiffs assert that they were unaware of the presence of illegal narcotics within Room 308. Pls' Statement at P 10. Their subjective awareness and proximity to the narcotics, however, is of no importance in this instance because the Defendant had probable cause to arrest the Plaintiffs upon the seizure of illegal narcotics from the room. See, e.g. *Maryland. v. Pringle, 540 U.S. 366, 374, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003)* (holding officer had probable cause to believe individual possessed cocaine and therefore could arrest individual, absent a warrant, based upon presence of narcotics and money within car).

**[*15]**  Because the Defendant had sufficient probable cause to arrest the Plaintiffs, I must grant the Defendant's motion for summary judgment on the Plaintiffs' false arrest and false imprisonment causes of action.

2. Illegal Search and Seizure

a. Search of Plaintiffs' Persons

Plaintiffs additionally assert that the Defendant violated their *Fourth Amendment* rights to be free from illegal searches and seizures when the Defendant searched their persons. Because the Defendant entered Room 308 and searched the Plaintiffs' persons pursuant to a valid search warrant, and permissibly searched their persons under the search-incident-to-arrest doctrine, the Defendant's motion for summary judgment must be granted.

In accordance with the requirements established by the United States Supreme Court, a search warrant is valid if it is issued by a neutral and disinterested magistrate upon a showing by affidavit of probable cause. *Dalia v. United States, 441 U.S. 238, 255, 99 S. Ct. 1682, 60 L. Ed. 2d 177 (1979).* The search warrant must also describe with sufficient particularity the location to be searched, the items to be seized, and the persons who may be searched. Id.

In addition to these fundamental requirements, **[*16]** New York courts recognize the constitutionality of an "all persons" search warrant, such as the one used here, when probable cause exists to believe that any and all individuals found within a given location are involved in criminal activity. *Campbell v. Fernandez, 2d F. Supp. 2d 195, 197 (S.D.N.Y. 1999); People v. Nieves, 36 N.Y. 2d 396, 404, 330 N.E.2d 26, 369 N.Y.S.2d 50 (1975).* Most commonly, "all persons" search warrants are issued when the police suspect illegal narcotics trafficking or distribution from a particular location, but are unable to name the specific individuals to be searched. See, e.g. *People v. Miner, 126 A.D.2d 798, 510 N.Y.S.2d 300, 302 (N.Y. App. Div 1987)* ("all persons" search warrant valid where probable cause existed to believe area and persons involved in drug trafficking); *People v. Soler, 92 A.D.2d 280, 460 N.Y.S.2d 537, 541 (N.Y. App. Div. 1983)* (search of bystander in room during execution of "all persons" search warrant valid because of suspected drug trafficking).

The Defendant entered Room 308 pursuant to a validly executed search warrant authorizing the search of "all persons" found within Room 308. Defendant's Affidavit in Support of Motion **[*17]** for Summary Judgment ("Def's Aff."). Ex. B. A neutral and disinterested judge issued a sufficiently particular search warrant identifying the location to be searched and the items to be seized. Def's Aff., Ex. B. The judge issued the search warrant upon receiving the Defendant's affidavit establishing probable cause. The Defendant developed probable cause to believe criminal activity was taking place within Room 308 based upon the information provided by a confidential informant working with the Task Force. A police officer may rely upon the reports of an informant to establish probable cause when the "totality of the circumstances" indicates that the informant's information is reliable and truthful. *Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).* The Defendant had reason to rely on the confidential informant's information based upon two prior successful drug transactions the informant conducted with "Nino," within Room 308, at the request of the Task Force. Def's Aff., Ex. B at PP 5 & 6. Based upon these transactions, the Defendant could conclude with sufficient probability that criminal activity was afoot in Room 308. *People v.*

*Miner, 126 A.D.2d 798, 510 N.Y.S.2d 300, 302 (N.Y. App. Div 1987)* **[*18]** (two controlled purchases of illegal narcotics is sufficient evidence to establish probable cause of "activity inconsistent with innocent behavior.").

Because the Defendant entered Room 308 and searched the Plaintiffs' person pursuant to a valid search warrant, the Defendant is entitled to summary judgment on the Plaintiffs' claims of illegal search and seizure.

In addition to the authority to search the Plaintiffs per the search warrant, the Defendant was also authorized to search the Plaintiffs' persons under the "search incident to arrest" doctrine articulated by the Supreme Court in *Chimel v. California, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969).* In Chimel, the Supreme Court recognized that it is reasonable for a police officer to conduct a search of the arrestee's person, and the area around the aresstee's person, known as his or her wing span, even in the absence of a warrant. *395 U.S. at 763.*

Naturally, Chimel's search-incident to arrest doctrine only applies when there is a valid basis for an arrest. As noted, supra, upon entering Room 308 to execute the valid search warrant, the Defendant found several transparent zip lock bags, later identified as containing **[*19]** cocaine and marijuana, as well as an electronic scale and a large quantity of U.S. currency. The presence of such narcotics and drug paraphernalia within Room 308 provided the Defendant ample justification to arrest the Plaintiffs on the suspicion that they were involved in the commission of a crime. Because the Defendant had probable cause to arrest the Plaintiffs, the Defendant was authorized to search their persons upon arrest under Chimel.

Plaintiffs cite to *Ybarra v. Illinois, 444 U.S. 85, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979),* in support of the proposition that the search of their persons was unconstitutional. Reliance on Ybarra, however, is mistaken. Ybarra dealt with the execution of a no-knock search warrant at a tavern. *444 U.S. at 88.* The search warrant only authorized the police to search the tavern and one named suspect, the bartender. Id. Upon entering the tavern, however, the police frisked all persons located within the tavern, including petitioner Ybarra. Id. As a result of the frisk of Ybarra's person, the police seized a package of cigarettes containing heroin. *Id. at 89.*

In suppressing the evidence of narcotics possession, the **[*20]** Supreme Court held that each person who entered the tavern continued to hold his or her individualized *Fourth Amendment* right to be free from unreasonable searches and seizures. *Id. at 91.* The Court noted that "a search or seizure of a person must be supported by probable cause particularized with respect to that person." Id. The Court held that the reasonable suspicion required to frisk each occupant of the tavern could not be

extrapolated from the probable cause supporting the issuance of the search warrant. Id.

The present situation, however, is markedly different from the one posed in Ybarra. Unlike Ybarra, where the search warrant only authorized the search of the premises and one individual, here, the Defendant entered Room 308 with a search warrant authorizing him to search "[a]ll persons found within [Room 308 of the Wellesley Inn]," Def's Aff., Ex. B. Additionally, upon entry, the Defendant seized several clear bags containing illegal narcotics from a table located towards the back of the room. Pls' Statement Ex. 6 at 6-7, lines 18-4. Differing from Ybarra, here, illegal contraband was first found within the room and then the [*21] Defendant searched the Plaintiffs. In Ybarra, just the opposite was true: the initial search of the petitioner led the police to discover illegal contraband. Cf. Md. v. Pringle. 540 U.S. 366, 373, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003) (noting the Fourth Amendment protection recognized in Ybarra does not equally apply to individuals in private locations who are in close proximity to illegal narcotics).

Unlike Ybarra, in which the petitioner was frisked only because of his presence in the bar, the Plaintiffs here were arrested and searched due to the presence of illegal narcotics within the room. Additionally, the properly issued search warrant authorized the searches of the Plaintiffs' persons. Accordingly, the Defendant is entitled to summary judgment on Plaintiffs' claim of illegal search and seizure.

b. Strip Search

Plaintiffs additionally assert their constitutional right to be free from illegal searches and seizures was violated when they were subjected to full body strip searches subsequent to their arrest. Plaintiffs are correct in arguing that pre-trial detainee strip searches are governed by the Fourth Amendment's reasonableness standard. Weber v. Dell. 804 F.2d 796, 802 (2d Cir. 1986). [*22] Plaintiffs are unable, however, to establish that the Defendant was the individual who conducted the strip searches. In order for Plaintiffs to succeed on their § 1983 claim for illegal search and seizure, Plaintiffs must establish, with sufficient definiteness, the precise actor or actors who deprived them of their constitutional rights. See Blyden v. Mancusi. 186 F.3d 252, 264 (2d Cir. 1994) (personal involvement of defendant prerequisite to award of damages under 1983); McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977) (absence of evidence of defendant's personal involvement in alleged deprivation of rights fatal to § 1983 claim against defendant). Because the Plaintiffs have not provided sufficient evidence from which a finder of fact could conclude that the Defendant conducted or oversaw the strip searches, their claim cannot survive the Defendant's motion for summary judgment.

The evidence put forth by Plaintiffs fails to identify the Defendant as the police officer who conducted the strip search. The deposition of Plaintiff Vogeler ends with the Plaintiff explicitly denying that he had "any interaction with Police Officer Colbath" on [*23] the evening of May 1, 2003. Pls' Statement Ex. 12 at 48, lines 20-22. Plaintiff Kiechle's deposition only affirms the fact that he was strip searched; at no time does the Plaintiff identify who conducted the strip search. Pls' Statement Ex. 11 at 43, lines 18-22.

Plaintiffs assert that the Defendant's name on their arrest reports establishes that the Defendant was the officer who "oversaw" their respective strip searches. Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiffs' Cross Motion for Summary Judgment ("Pls' Memo") at 12. Such a nominal assertion on the part of the Plaintiffs, without more, does not create a genuine issue of material fact. See Scotto v. Almenas. 143 F.3d 105, 114 (2d Cir. 1998) (a "non-moving party may not rely on conclusory allegations or unsubstantiated speculation" when attempting to establish a genuine issue of material fact). The Defendant, however, testified that his presence in Room 308 was only to serve as the evidence officer, the individual responsible for gathering any illegal contraband seized during the execution of a search warrant. Pls' Statement Ex. 6 at 6, lines [*24] 1-9. While Defendant's name is on the arrest report for both Plaintiffs. Pls's Statement Ex. 2 and Ex 4, absent more specific evidence upon which a jury could find that the Defendant administered or oversaw the challenged strip searches, this court must grant the Defendant's motion for summary judgment on the claim of unconstitutional strip searches.

3. Malicious Prosecution

Plaintiffs also assert a claim of malicious prosecution. The elements of malicious prosecution in New York are: "(1) the defendant commenced or continued a criminal proceeding against plaintiff, (2) the proceeding terminated in plaintiff's favor, (3) there was no probable cause for the criminal proceeding, and (4) the defendant initiated the criminal proceeding out of malice." Bernard v. United States, 25 F.3d 98, 104 (2d Cir.1994) (citation omitted). Some type of judicial proceeding must occur prior to the complained of deprivation of rights because the "essence of malicious prosecution is the perversion of proper legal procedures." Singer, 63 F.3d at 117 (quoting Broughton v. State of New York, 37 N.Y.2d 451, 457, 335 N.E.2d 310, 373 N.Y.S.2d 87 (1975)). Generally, the required judicial [*25] proceeding is in the form of a warrant, an arraignment, or an indictment by a Grand Jury.

Case 1:07-cv-04795-NRB    Document 6-4    Filed 07/21/2008    Page 15 of 37

Page 7
2005 U.S. Dist. LEXIS 44658, *

*Singer. 63 F.3d at 117*. A claim for malicious prosecution cannot survive summary judgment absent evidence of bad faith or malice on the part of the police. *Bernard, 25 F.3d at 104.*.

In the present case, the Defendant served as the affiant for the search warrant leading to the arrest and search of the Plaintiffs' persons. Pls' Statement at Ex. 7. Plaintiffs were subsequently charged with Criminal Possession of a Controlled Substance in the Third Degree, *N.Y. PENAL LAW § 220.16(1)* (Consol. 2005), and Unlawful Possession of Marijuana, *N.Y. PENAL LAW § 221.05* (Consol. 2005). Akin to the absolute probable cause defense Defendant can raise to the false arrest and false imprisonment claim, and the illegal search and seizure claim, Defendant is also entitled to summary judgment on the malicious prosecution charge because he acted pursuant to probable cause. *Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003)*. As explained, supra, Defendant had probable cause to believe that criminal activity **[\*26]** was conducted within Room 308 of the Wellesley Inn based upon the information provided by the confidential informant. See supra, Sections (C)(1) and (C)(2). Using this information, the Defendant validly obtained a search warrant. Upon entry into Room 308, the Defendant seized several bags of illegal narcotics, including cocaine and marijuana, arrested the Plaintiffs, and conducted a valid search of their persons. As such, the Plaintiffs cannot establish that the Defendant acted without the requisite probable cause necessary to establish a successful claim of malicious prosecution.

Moreover, Plaintiffs have asserted no evidence of actual malice on the part of the Defendant. Evidence of actual malice is required to establish an actionable claim for malicious prosecution. Such evidence can be inferred from a lack of probable cause, *Sulkowska v. City of New York, 129 F. Supp. 2d. 274, 295 (S.D.N.Y. 2001)*, by proof of the defendant's recklessly or grossly negligent conduct, *Boose v. Rochester, 71 A.D.2d 59, 421 N.Y.S. 2d 740, 749 (N.Y. App. Div. 1979)*, or by some evidence that the Defendant had an improper motive for initiating the proceedings, *Hernandez v. City of Rochester, 260 F. Supp 2d 599, 615 (W.D.N.Y. 2003)*. **[\*27]**

In this case, actual malice cannot be inferred from the lack of probable cause because the Defendant had the requisite probable cause to believe Room 308 was being used for criminal purposes, to arrest the Plaintiffs, and to search their persons. Plaintiffs' only offer of evidence of Defendant's actual malice is a taunt, attributed to the Defendant by Plaintiff Kiechle, upon the Plaintiffs' arrest. Pls' Statement Ex. 11 at 28, lines 7-12 (unidentified member of the Task Force told Plaintiffs they "were in trouble," upon arrest). This statement, alone, neither establishes actual malice, nor evinces bad faith on the part of the Defendant required for a successful malicious

prosecution cause of action. [5] *Hernandez, 260 F. Supp. 2d. at 615* (absence of evidence of improper motive fatal to malicious prosecution claim on summary judgment).

> 5  Further supporting Defendant's motion for summary judgment is the fact that this statement is not even firmly attributed to the Defendant. See Pls' Statement Ex 11 at 28, lines 7-12.

**[\*28]** Because the Plaintiffs have failed to establish evidence of the required actual malice for a successful malicious prosecution claim, and because the Defendant had probable cause to obtain a search warrant and arrest the Plaintiffs, Defendant's motion for summary judgment on the Plaintiffs' malicious prosecution claim is granted.

### 4. Excessive Force

Unlike Plaintiffs' three other causes of action, Plaintiffs' claim for excessive force does not turn on whether the Defendant acted upon the requisite degree of probable cause, but whether the Defendant's conduct was "objectively reasonable" in light of the facts and circumstances as presented to the Defendant at the time of the Plaintiffs' arrest. *Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)* (quoting *Scott v. United States, 436 U.S. 128, 137-139, 98 S. Ct. 1717, 56 L. Ed. 2d 168 (1978))*. In order to succeed on a claim of excessive force, the Plaintiffs must put forth evidence that the Defendant's conduct was "objectively sufficiently serious or harmful. . . ." *U.S. v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999)*. Generally, the force used by the Defendant must be more than de minimis in order for the Plaintiffs' claim to be actionable. **[\*29]** *Graham, 490 U.S. at 397; Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993)*. Finally, Plaintiffs must also allege, and support with evidence, the personal involvement of the Defendant in the actions underlying their claim. *Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003)* (personal involvement of Defendant is predicate for award for damages under *§ 1983*).

Plaintiffs base their excessive force claim upon two separate instances during the course of their arrest. First, Plaintiffs claim they were both subjected to tight handcuffing when arrested. Pls' Memo. at 13. Second, Plaintiffs claim they were lifted and dragged off the ground by their arms when their hands were cuffed behind their backs. Id. Like their other claims, because the record does not establish a genuine issue of material fact, I grant Defendant's motion for summary judgment.

### a. Tight Handcuffing

When analyzing a claim of excessive force based upon the use of handcuffs, in addition to evidence of the fact that the handcuffs were too tight and that the Plaintiffs' requests for them to be loosened went unanswered,

the court may consider the degree of injury [*30] suffered by the Plaintiffs. *Esmont v. City of New York*, 371 F. Supp 2d 202, 215 (E.D.N.Y. 2005). While tight handcuffing, alone, can give rise to a cause of action under § 1983, *Simpson v. Saroff*, 741 F. Supp. 1073, 1078 (S.D.N.Y. 1990), the plaintiffs must suffer some form of injury from the tight handcuffs in order for such a claim to be actionable. Id. (excessive force claim proper when tight handcuffing lead to bloody wrist and scarring). Though the Plaintiffs' injuries need not be severe or permanent, some injury must be asserted. *Esmont*, 371 F. Supp 2d at 215.

Both Plaintiffs claim they were tightly handcuffed when arrested, Pls' Statement Ex. 11 at 41, lines 12-13; Pls' Statement Ex. 12 at 46 lines 9-11, and that their requests for their cuffs to be loosened went unheaded. Pls' Statement Ex. 11 at 47, lines 2-7; Pls' Statement Ex. 12 at 46, lines 9-20. Despite these complaints, Plaintiff Kiechle testified that he was neither injured nor hurt during the course of arrest. Pls' Statement Ex. 11 at 41, lines 66-67. Plaintiff Vogeler also testified that he was not hurt during the course of his arrest. Pls' Statement Ex. 12 [*31] at 46, lines 21-23 and Ex. 12 at 47, lines 6-10. Neither Plaintiffs' testimony establishes they suffered any harm, let alone any measurable harm. Unlike prior excessive force cases where plaintiffs have survived summary judgment by putting forth evidence of bleeding and scarring, *Simpson*, 741 F. Supp at 1078, or prolonged bruising, *Robison v. Via*, 821 F.2d 913 (2d Cir. 1993), the Plaintiffs' mere claims of minor discomfort do not establish a triable issue that can withstand Defendant's motion for summary judgment. *Esmont*, 371 F. Supp. 2d. at 215 (quoting *Carter v. Morris*, 164 F.3d 215, 219, n.3 (4th Cir. 1999)).

b. Handling of the Plaintiffs' Persons

Plaintiffs also claim that they were lifted off the ground by their arms while lying handcuffed face down on the ground. Pls' Statement Ex 11 at 68, lines 16-24; Pls' Statement Ex. 12 at 47, lines 8-10. This claim, however, suffers from many of the same defects that the Plaintiffs' other causes of action suffer. Plaintiffs have neither provided sufficient evidence to establish that the Defendant was personally involved in the excessive force, *Hernandez*, 341 F.3d at 144, [*32] nor have they proven that they suffered any injury from the complained-of activity. *Esmont*, 371 F. Supp. 2d. at 215. As such, the Plaintiffs fail to establish a triable issue of fact that can survive Defendant's motion for summary judgment.

While both Plaintiffs complain of being lifted from the ground while handcuffed, Pls' Statement at P 3, neither Plaintiff has identified the offending officer. Both Plaintiffs' depositions are replete with generic references

to "the officers," and allusions to multiple police officers being present during the course of their arrest. See, e.g. Pls' Statement Ex. 11 at 28; Pls' Statement Ex. 12 at 22, 47. Plaintiff Kiechle is unable to identify the police officer or officers that physically handled him that evening. Pls' Statement Ex. 11 at 66. Likewise, Plaintiff Vogeler cannot recall any police officer exhibiting any "vicious propensities" or using excessive force during the course of the arrest. Pls' Statement Ex. 12 at 33-34, lines 25-7. Most explicit, Plaintiff Vogeler claims he had no personal interaction with the Defendant on the night of his arrest, May 1, 2003. Pls' Statement Ex. 12 at 48, lines 20-22. [6]

6 In fact, this is the only time the Defendant is mentioned by name during the course of either Plaintiffs' deposition. Though having no legal significance, it is interesting to note that the only reason the Defendant's name appears anywhere in the course of either Plaintiffs' deposition provided to the court is because it was brought up by Mr. Specht, an attorney for the Town of Ramapo.

[*33] Assuming, *arguendo*, that Plaintiffs could establish that the Defendant was the individual who physically lifted them from the ground, the Defendant's actions would be assessed against the *Fourth Amendment's* reasonableness standard. *Saucier v. Katz*, 533 U.S. 194, 204, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001); *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Under this standard, the police have the latitude to "use some degree of physical coercion or threat thereof" to effectuate an arrest. *Graham*, 490 U.S. at 396. Factors that a court may consider when evaluating an excessive force claim include the severity of the crime, whether the suspect posed a threat to the officers, and whether the suspect was resisting or attempting to evade arrest. Id.

In their motion for summary judgment, Plaintiffs employ the tautological argument, "no use of force was permitted because none was required." Pls' Mem. at 13. The standard articulated by the Supreme Court, however, is not whether force was required, but rather whether the use of force was reasonable under the circumstances as presented to the officers at the time of arrest. *Graham, 490 U.S. at 396.* As has [*34] been quoted numerous times when assessing excessive force causes of action, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the *Fourth Amendment*." Id. (internal citations omitted).

Plaintiffs' claim that the Defendant exerted "gratuitous and unnecessary" force during the course of their arrest cannot withstand Defendant's motion for summary judgment. While Plaintiffs may have been lifted in an unconventional manner, they have failed to show that

2005 U.S. Dist. LEXIS 44658, *

such action was any more than de minimis force exerted during the course of an arrest following the raid of a suspected drug trafficking locale. See, e.g. *Roundtree v. N.Y., 778 F. Supp 614, 622-23 (E.D.N.Y. 1991)* (defendant's motion for summary judgment on claim of excessive force proper when plaintiff suffered no physical injuries and required no medical attention); but see, *Maxwell v. City of New York, 380 F.3d 106, 109 (2d Cir. 2004)* (allowing an excessive force claim to survive defendant's motion for summary judgment when plaintiff suffered from post-concussive syndrome).

Because the Plaintiffs have failed to produce the requisite proof [*35] required to establish a "genuine issue of material fact" regarding their claims of excessive force against the Defendant, the Defendant's motion for summary judgment on the claim for excessive force must be granted.

**CONCLUSION**

For the foregoing reasons, I grant the Defendant's motion for summary judgment in its entirety. Accordingly, I deny the Plaintiffs' cross-motion for summary judgment.

**CONCLUSION**

For the foregoing reasons, I grant the Defendant's motion for summary judgment in its entirety. Accordingly, I deny the Plaintiffs' cross-motion for summary judgment.

Dated: October 6, 2005

White Plains, New York

**SO ORDERED**

Lisa Margaret Smith

United States Magistrate Judge

Southern District of New York

LEXSEE 2003 U.S. DIST. LEXIS 19078

**WILLIAM TURNER WILLIAMS, JR., Plaintiff, -against- CITY OF NEW YORK, DET. VIVIAN POTTER, individually, and UNIDENTIFIED NEW YORK CITY POLICE DEPARTMENT PERSONNEL, individually, Defendant.**

**02 Civ. 3693 (CBM)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2003 U.S. Dist. LEXIS 19078*

**October 23, 2003, Decided**
**October 23, 2003, Filed**

**SUBSEQUENT HISTORY:** Affirmed by *Williams v. City of New York, 2005 U.S. App. LEXIS 1207 (2d Cir. N.Y., Jan. 21, 2005)*

**DISPOSITION:** [*1] Defendants motion for summary judgment pursuant to *Rule 56 of the Federal Rules of Civil Procedure* was granted.

**COUNSEL:** S. Jean Smith, New York, NY, for the plaintiff.

Michael A. Cardozo, Corporation Counsel of the City of New York, by John M. Lambros, Corporation Counsel of the City of New York, for Defendants City of New York and Detective Vivian Potter.

**JUDGES:** CONSTANCE BAKER MOTLEY, United States District Judge.

**OPINION BY:** CONSTANCE BAKER MOTLEY

**OPINION**

MOTLEY, District Judge.

Plaintiff William T. Williams, Jr. brings this action pursuant to *42 U.S.C. § 1983* ("*Section 1983*") against defendants Vivian Potter, former Detective for the City of New York; New York City ("City"), a municipality within the state of New York, and unidentified personnel of the New York City Police Department, alleging violations of his rights under the *Fifth* and *Fourteenth Amendments to the United States Constitution*. Specifically, plaintiff charges false arrest, false imprisonment, and malicious prosecution.

Defendants move for summary judgment pursuant to *Rule 56 of the Federal Rules of Civil Procedure.* [*2] For the reasons stated in the opinion below, defendants' motion is hereby GRANTED.

BACKGROUND

On the morning of February 5, 2000, Michael O'Hern was stabbed four times at West 3rd Street and Sixth Avenue, New York, NY.

I. Police Reports Describing the Assault and the Assailant

Police reports about the incident state that there was a scuffle between O'Hern and another man during a narcotics transaction, during which the man demanded $ 20.00 from O'Hern and stabbed him. The perpetrator is described as a Black man, age 50, 5'11" and 150 pounds, with a salt and pepper beard and moustache. All of the reports conform to this account of the stabbing and the assailant, with two reports including the additional information that O'Hern spit a razor blade from his mouth towards his assailant according to witness Willmont Rush, and that the assailant had a Jamaican accent according to witness Monica Wickers.

II. The Assault Weapon

At the time of the stabbing, Officers Wright and Bernard Williams were in the West 3rd Street subway station when they heard commotion coming from West 3rd Street. Officer Williams subsequently stopped a Black man, age 50, 5'10" - 5'11" [*3] and 150 pounds, unshaven, wearing a black parka jacket with a hood and dark clothing. Williams confiscated a closed knife from the man and then permitted him to proceed. Shortly thereafter, upon learning of the knife's possible connec-

tion to a crime. Williams gave the knife to another officer who arrived at the scene of the assault to investigate. Later, the blood on the knife was found to be connected to the blood found where O'Hern was stabbed.

III. Victim's Account of the Assault and his Identification of Plaintiff Williams as the Assailant

On February 6, Detective Vivian Potter and Detective Moller went to St. Vincent's Hospital to interview O'Hern. According to O'Hern's version of the assault and the events leading up to it, the night before the stabbing, he partied all night with DC, Tina, and a man he knew as "Dred" or "Black." The next morning, the group was attempting to purchase narcotics when "Dred" accused O'Hern of taking $ 20 from him and stabbed him. O'Hern described "Dred" as a Black man, in his 50's, 5'11", with a full beard and salt and pepper dreadlocks, wearing a dark coat. The officers showed O'Hern some photographs in attempt to identify Dred, but O'Hern [*4] did not make a positive identification at this time.

After O'Hern was released from the hospital, he went to the 6th precinct police station and looked at the police's PIMS computer database with Detective Potter. Detective Potter describes the PIMS database as a photo-imaging system that allows the police to input various descriptive characteristics of an individual and the system generates photographs of individuals matching the description given. Based on O'Hern's description, the database produced photographs from which O'Hern identified plaintiff Williams as his attacker. O'Hern swears that "there were hundreds of pictures to choose from. I had no trouble identifying William T. Williams." O'Hern further swears that the police did not attempt to influence his identification.

On February 18th, plaintiff Williams was arrested by two undercover officers for possessing a crack pipe. At the police station, Detective Potter showed Williams a picture of O'Hern. Williams said that he'd seen the man in the picture around and identified him as "Lefty", claiming that he wasn't aware of Lefty's proper name. He also stated that he was with Mr. O'Hern immediately before the stabbing because [*5] he was trying to buy crack for Mr. O'Hern.

Thereafter, Detective Potter arranged a line-up including plaintiff Williams. O'Hern viewed the line-up and identified Williams as his attacker. O'Hern swears that "no one, in any way, suggested to me that I identify any (sic) particular person. All of the people in the line-up looked somewhat similar but I could easily identify William T. Williams because he stabbed me. I could not forget him." Detective Potter testified that based on her impression of O'Hern identification, O'Hern was "positive", "lucid", and "sure." She states: "If there had been

any doubt in my mind, then I may have gone for additional witnesses."

In his deposition, plaintiff Williams states that to his knowledge, O'Hern does not have anything against him.

IV. The Prosecution of Plaintiff Williams

On February 19th, Williams was arrested and charged with attempted murder in the 2nd degree, assault in the 1st degree, robbery in the 1st degree and criminal possession of a controlled substance. O'Hern testified before the Grand Jury that Williams was his assailant. The Grand Jury indicted Williams for attempted murder, assault, and attempted robbery. On June 7, 2000, New [*6] York Supreme Court Justice James Yates denied Williams' motion to dismiss the charges, stating that "having examined the Grand Jury minutes, the evidence adduced before the Grand Jury was legally sufficient to support the charges."

On September 21, 2000, a DNA test of the blood on the knife revealed that the blood belonged to Mr. O'Hern and an unidentified individual, but not plaintiff Williams. On November 13, 2001, on the court's own motion, Justice Yates dismissed the indictment against plaintiff Williams.

STANDARD OF REVIEW ON SUMMARY JUDGMENT

According to *Fed. R. Civ. P. 56(c)*, summary judgment "shall be rendered forthwith" if it is shown that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548, 2552.* (1986). "Genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable [*7] substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 5 (2d Cir. 1999)* (internal quotations and citations omitted). In order to prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleading[s]." but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P. 56(e).* "Conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).*

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. See *Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998).* The moving party bears the initial burden of demonstrating an ab-

sence of genuine issues of material fact. See *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact [*8] exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and citations omitted) (alteration in original).

## ANALYSIS

### I. False Arrest

A § 1983 claim for false arrest derives from the right to be free from unreasonable search and seizures, including the right to be free from arrest absent probable cause. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). A false arrest claim under § 1983 "is substantially the same as a claim for false arrest under New York law." *Weyant*, 101 F.3d at 852 (citations omitted). Under New York law, "a plaintiff claiming false arrest must show, *inter alia*, that the defendant intentionally confined him without his consent and without justification." *Id. at 852.* Probable cause constitutes justification, and is therefore a complete defense to an action for false arrest. *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003). See also *Weyant*, 101 F.3d at 852 ("The existence of probable [*9] cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983") (internal citations omitted) (citations omitted). The issue of whether an arresting officer had probable cause to arrest can be determined as a matter of law if "the pertinent events and knowledge of the officers" are not in dispute. *Weyant*, 101 F.3d at 852. The plaintiff bears the burden of demonstrating a lack of probable cause for the arrest. *Baker v. McCollan*, 443 U.S. 137, 143-46, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979).

Whether or not there was probable cause to arrest depends on the information available at the time of the arrest, *Peterson v. County of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y 1998), judged against the "totality of the circumstances," *Illinois v. Gates*, 462 U.S. 213, 233, 101 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). There is probable cause to arrest "when the arresting officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the [*10] person to be arrested.'" *O'Neill v. Town of Babylon*, 986 F.2d 646, 650 (2d Cir. 1993). See also *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991). The amount of evidence "need not reach the level of evidence necessary to support a conviction... but it must constitute more than rumor, suspicion, or even a strong reason to suspect."

*United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983) (citations omitted) (internal citations omitted).

Applying these standards to the case at bar, there was probable cause to arrest plaintiff Williams for O'Hern's assault. The victim identified Williams first in a photograph display, then again in a line-up.[1] O'Hern was unequivocal in his identification and Detective Potter had no reason to question O'Hern's statement. Williams admitted that he was with O'Hern immediately before the assault and that O'Hern had nothing against him. Given these facts, an officer of reasonable caution would have believed that Williams was O'Hern's assailant.

> 1 Plaintiff disputes that the PIMS identification ever took place on the grounds that a photo from the PIMS result cannot be found in Potter's case file and according to the six birth dates he gave upon arrest, the PIMS database would not have produced his photograph. By contrast, O'Hern swears in an affidavit that he identified Williams from photos generated by the PIMS database. Detective Potter, in her deposition, states that the fact that the date she put in for Williams' actual age may not have been correct is not dispositive. "... I'm not sure the photo listed his correct age. Sometimes there are different photos of the same perpetrator in the PIMS machine. If it isn't in their arrest history and tied into their age or date of birth, things can come up differently." Because plaintiff cannot rely on conclusory allegations or speculation to create a factual dispute about the photo identification and plaintiff has not produced specific facts indicating that a genuine issue of fact exists, plaintiff's claim that the photo identification did not take place is merely colorable and does not defeat summary judgment. See *Scotto Almenas* 143 F.3d at 114.

[*11] Plaintiff argues that probable cause is defeated by the fact that Detective Potter did not further investigate information plaintiff alleges cast doubt on his guilt, such as the eyewitness description of the assailant as having a Jamaican accent (whereas Williams allegedly does not), the possibility that O'Hern may have had a razor in his mouth, and the fact that O'Hern stated "I recognize him from when I was stabbed," but had previously stated that he "knew" the assailant from having partied with him the night before the assault.

While "the police may not purposely withhold or ignore exculpatory evidence that, if taken into account, would void probable cause," probable cause attaches to a warrantless arrest even if police could have undertaken further investigation. *Richards v. City of New York*, 2003 U.S. Dist. LEXIS 8037, 2003 WL 21036365, *16 (S.D.N.Y. May 7, 2003) See also *Gisondi v. Harrison*,

*72 N.Y.2d 280, 285, 532 N.Y.S.2d 234, 237, 528 N.E.2d 157 (1988)* ("The police are not obligated to pursue every lead that may yield evidence beneficial to the accused, even though they had knowledge of the lead and the capacity to investigate it," but they may not withhold evidence [*12] where "discrepancies are so substantive that failure to disclose them would be comparable to fraud or perjury"); *Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989)* ("It would be unreasonable and impractical to require that every innocent explanation for activity that suggests criminal behavior to be proved wrong, or even contradicted, before an arrest warrant could be issued with impunity"); *Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997)* ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest"). Applying these standards, Detective Potter was not obligated to address every possible discrepancy or alternative prior to arresting Williams. None of the "discrepancies" plaintiff points to are so glaring that failure to pursue them constitutes unreasonable police conduct. In fact, even if further investigation had yielded results in plaintiff's favor, the evidence would not have voided probable.

Plaintiff also challenges probable cause on the grounds that O'Hern's credibility was too [*13] weak to warrant a reasonable police officer in relying on his identification of Williams. However, the law does not require police officers to engage in extensive fact-finding regarding the victim's credibility.

> "To ... insist upon a collateral investigation into the credibility of the complainants would place an unfair burden on law enforcement officers. It would be unreasonable and impractical to require that each complainant be assessed prior to police action regarding the subject of the complaint. Under our system of justice, 'it is up to the factfinder to determine whether a defendant's story holds water, not the arresting officer.'"

*McDermott v. City of New York, 1995 WL 347041, \*4 (May 30, 1995, E.D.N.Y.)* citing *Krause v. Bennett, 887 F.2d at 371.* The fact that the victim and the arrestee present conflicting accounts does not negate probable cause. *Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001)* (citations omitted). In the Second Circuit, "an arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint ... charging someone with the crime, has probable [*14] cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995); Mistretta v. Prokesch, 5 F. Supp.2d 128, 133 (E.D.N.Y 1998); Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F Supp 351, 355 (S.D.N.Y. 1992),* aff'd without opinion, *993 F 2d 1534 (2d Cir. 2003).* "The most common situation in which (doubts as to veracity) arise is when there exists a prior relationship between the victim and the accused that gives rise to a motive for a false accusation." *Mistretta, 5 F. Supp.2d at 133.* These cases do not require that the victim's statement be wholly ignored, but "that the police have additional information to buttress the victim's statement." *McBride v. City of New Haven, 2000 U.S. Dist. LEXIS 15964, 2000 WL 559087, \*11 (D.Conn. March 30, 2000),* citing *Singer, 63 F.3d at 119.*

Here, defendants did not have reason to question O'Hern's credibility based on his possible prior relationship with Williams because Williams admitted that O'Hern bore no animosity towards him. Even if O'Hern's veracity could be [*15] questioned on this basis, probable cause was not lacking because the defendants "did more" than rely on O'Hern's identification. Williams' own statement that he was with O'Hern immediately before the stabbing and he knew O'Hern verified O'Hern's veracity, in addition to O'Hern's repeated unequivocal identification of Williams as the man who stabbed him.

Because probable cause attached to plaintiff Williams' arrest, as a matter of law, Williams' false arrest claim cannot stand. *Weyant, 101 F.3d at 852.*

## II. Malicious Prosecution

To sustain a *§ 1983* claim based on malicious prosecution, a plaintiff must demonstrate conduct by the defendant that is tortious under state law and results in a constitutionally cognizable deprivation of liberty. *Singer v. Fulton County Sheriff, 63 F.3d at 116.* To make out a claim for malicious prosecution under New York State law, a plaintiff must prove "1) the initiation or continuation of a criminal proceeding against plaintiff; 2) termination of the proceeding in plaintiff's favor; 3) lack of probable cause for commencing the proceeding; *and 4)* actual malice as a motivation for defendant's actions." *Russell v. Smith, 68 F.3d 33, 36 (2nd Cir. 1995)* [*16] (emphasis added). As with a false arrest claim, the existence of probable cause entitles the defendants to summary judgment. *See Broughton v. State, 37 N.Y.2d 451, 456-57, 373 N.Y.S.2d 87, 92-93, 335 N.E.2d 310 (1975),* cert denied sub nom, *423 U.S. 929, 46 L. Ed. 2d 257, 96 S. Ct. 277 (1975).*

The plaintiff satisfies the first prong; clearly a prosecution was initiated against him. *See Mejia v. City of New York, 119 F. Supp.2d 232, 254 (E.D.N.Y. 2000)* (in the case of a warrantless arrest, the prosecution com-

mences at the time of the arraignment or grand jury indictment). Plaintiff also satisfies the second prong; because the judge dismissed the charges against him stemming from O'Hern's assault, the prosecution clearly terminated in his favor.

It is the third prong - whether or not there was probable cause to prosecute - where plaintiff's malicious prosecution claim falters. "In the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie." McDermott v. City of New York, 1995 WL 347041, [*17] *5 (E.D.N.Y. May 30, 1995,); Feinberg v. Saks & Co., 56 N.Y.2d 206, 451 N.Y.S.2d 677, 436 N.E.2d 1279 (1982). See also Lowth v. Town of Cheektowaga, 82 F.3d 563, 571-72 (2d Cir. 1996). Because there was probable cause to arrest plaintiff, and plaintiff has not introduced evidence to suggest that the defendants had different information available to them between the time of Williams' arrest and his grand jury indictment, defendants had probable cause to prosecute plaintiff Williams.

Moreover, probable cause to prosecute Williams is assumed because a Grand Jury indicted him. Colon v. City of New York, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248 (1983), rearg denied, 61 N.Y.2d 670, 472 N.Y.S. 2d 1028 (1983). Plaintiff may rebut the presumption by evidence establishing that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith. Id. at 83; Bernard v. United States, 25 F.3d 98, 104; Broughton v. State, 37 N.Y.2d at 456, 373 N.Y.S.2d at 93. Alternatively, the presumption "'can be overcome by [*18] a showing by claimant that the conduct of the police deviated so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures.'" Richards, 2003 U.S. Dist. LEXIS 8037, 2003 WL 21036365 at * 14, citing Harris v. State, 302 A.D.2d 716, 756 N.Y.S.2d 302, 303 (February 13, 2003).

Here, plaintiff argues that the presumption is overcome by the possibility that Detective Potter failed to tell the Judge or Grand Jury about allegedly exculpatory information. As a preliminary matter, plaintiff's claim can only be directed towards Detective Potter because prosecutors are entitled to absolute immunity for activities that are intimately associated with the judicial phase of the criminal process, Imbler v. Pachtman, 424 U.S. 409, 430, 96 S. Ct. 984, 995, 47 L. Ed. 2d 128 (1976), including the choices they make regarding evidence presented to the Grand Jury, Maglione v. Briggs, 748 F.2d 116, 118 (2d Cir. 1984) (per curiam). At the same time, Detective Potter is not liable for malicious prosecution on this basis

unless there is evidence that she misled the prosecuting attorney. Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999). [*19] Once a criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution. Id. Plaintiff Williams has not provided any evidence showing that Detective Potter misled the prosecutor, so he cannot argue that her failure to present information to the Grand Jury defeats probable cause to prosecute.

Further, the possibility that Potter did not tell the Grand Jury about victim's potential possession of a razor blade and that officers at the scene did not identify Williams in a photo display falls short of the required showing of fraud, perjury, or bad faith to overcome the presumption of probable cause. [2] "The People maintain broad discretion in presenting their case to the Grand Jury and need not seek evidence favorable to the defendant or present all of their evidence tending to exculpate the accused." People v. Mitchell, 82 N.Y.2d 509, 515, 605 N.Y.S.2d 655, 658, 626 N.E.2d 630 (1993). In Gisondi v. Harrison, supra, the police arrested a man who matched certain [*20] characteristics given by the victim, but also deviated considerably from other identifying information provided by the victim and had a strong alibi. The arrestee, as a civil plaintiff, alleged that the police officer's failure to investigate his alibi and disclose these discrepancies constituted fraud, perjury, or bad faith sufficient to defeat probable cause. Gisondi disagreed.

"There may be extraordinary cases in which particular discrepancies are so substantive that failure to disclose them would be comparable to fraud or perjury. For instance, if the police knew that a person identified as a rapist by the victim was in fact in custody in the police station at the time of the rape, they could not withhold that evidence from the court with impunity ... But there are no such discrepancies in this case. On the contrary, the discrepancies which the police 'failed' to disclose here are not at all unusual, nor was it unusual or improper for them to do so. If the failure to disclose this type of discrepancy were held to constitute withholding of evidence, virtually every failed prosecution in which the police applied for an arrest warrant or testified at a felony hearing without [*21] noting every discrepancy revealed during the investigation, would give rise to suit

and trial for false arrest and imprisonment or malicious prosecution."

*Gisondi v. Harrison*, 72 N.Y.2d at 285, 532 N.Y.S.2d 234 (internal citations omitted) (citations omitted). By contrast, in Richards v. City of New York, 2003 U.S. Dist. LEXIS 8037, supra, an investigator's notes from the day of the murder and investigation included conflicting eyewitness accounts about the identity of the murderer and a statement by the leading eyewitness that someone else committed the crime. The plaintiff presented evidence that the notebook was not provided to the District Attorney and other investigators, thereby defeating the presumption that defendants had probable cause to prosecute. Although the information in the notebook about conflicting eyewitness accounts would not have voided probable cause, the leading witness' statement that someone else committed the crime could have affected the Grand Jury's decision. Richards v. City of New York, 2003 U.S. Dist. LEXIS 8037, 2003 WL 21036365, *17.

> 2    Plaintiff does not present any evidence that Williams' photo was included in the photos the officers examined. In order for the fact that the officers did not identify Williams to be relevant, Plaintiff would first need to show that they looked at his picture and affirmatively declined to identify him as the man they stopped and confiscated the knife from following the assault.

[*22] This case is more like Gisondi than Richards. As in Gisondi, even if Potter did not inform the Grand Jury of the allegedly exculpatory information, this information was not so substantive such that failure to disclose it was comparable to fraud or perjury. The information plaintiff identifies as central to his criminal innocence does not go to the heart of probable cause in the same fashion as the information in Richards. Unlike eyewitness testimony that someone else had committed the crime, the information here does not negate the possibility that plaintiff had in fact stabbed O'Hern.

Finally, Plaintiff cannot defeat the presumption of probable cause that attaches to the Grand Jury indictment simply by claiming that the information in question "was not likely to have been presented to the Grand Jury or Justice Yates." Plaintiff is not permitted to establish bad faith, fraud, perjury, or suppression of evidence by mere conjecture or surmise; rather, he must put forth evidence sufficient for a reasonable jury to make such a finding. See *Savino v. New York*, 331 F.3d 63, 73 (2nd Cir. 2003). In fact, the law presumes that Detective Potter communicated [*23] the information in question: "Where law enforcement authorities are cooperating in

an investigation, ... the knowledge of one is presumed shared by all." *Illinois v. Andreas*, 463 U.S. 765, 772, n 5, 103 S. Ct. 3319, 77 L. Ed. 2d 1003; *Savino, 331 F.3d at *4*. Even if plaintiff could show that Detective Potter did not pass on information to the prosecuting attorney, plaintiff cannot show that Potter's failure to do so was intentional. Id. ("In any event, even if other officers were aware that Sergeant Brooks had observed Savino continuously while he was alone in the room and that she did not see him take the ring, Savino has presented no evidence that this information was intentionally withheld from ADA Sullivan").

Finally, plaintiff cannot make out the fourth prong of a malicious prosecution claim because plaintiff cannot show that malice motivated Detective Potter's actions. Malice is "a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth, 82 F.3d at 573*. Plaintiff has not offered any evidence suggesting that if Detective Potter failed to disclose information to the prosecuting attorney [*24] or the Grand Jury, her motives were malicious.

Plaintiff cannot establish two of the four prongs necessary to sustain a claim for malicious prosecution. Plaintiff cannot overcome the presumption of probable cause created by the Grand Jury indictment and the existence of probable cause is a complete defense to a malicious prosecution claim. *Savino, 331 F.3d at 75*. Also, plaintiff fails to show that Detective Potter acted with malice. As such, defendants are entitled to summary judgment on plaintiff's claim for malicious prosecution as a matter of law.

III. Qualified Immunity

The threshold question in conducting a qualified immunity analysis is whether "taken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). "The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right." *Golino v. City of New Haven, 950 F.2d at 870*.

"In an unlawful arrest action, an officer is immune if he has [*25] 'arguable probable cause,' and is subject to suit only if his 'judgment was so flawed that no reasonable officer would have made a similar choice.'" *Provost v. City of Newburgh, 262 F.3d 146, 169 (2d Cir. 2001)*, citing *Lee v. Sandberg, 136 F.3d 94, 103 (2d Cir. 1997)*; *Lennon v. Miller, 66 F.3d 416, 425 (2d Cir. 1995)*; *Rogers v. City of Amsterdam, 303 F.3d 155, 158 (2d Cir. 2002)*, citing *Golino, 905 F.2d at 870*. "Arguable probable cause" is all that is required because "the concern of the immunity inquiry is to acknowledge that reasonable

mistakes can be made as to the legal constraints on particular police conduct." *Saucier, 533 U.S. at 205, 121 S. Ct. 2151.*

Although defendant Detective Potter is entitled to summary judgment on the basis that probable cause attached to plaintiff's arrest and prosecution, alternatively, Potter is entitled to summary judgment on the basis of qualified immunity. In the face of repeated victim identifications of Williams as the assailant, coupled with Williams' admission that he was present at the scene of the stabbing and that the victim bore no animosity **[*26]** towards him, it was objectively reasonable for Potter to believe there was probable cause to arrest and prosecute plaintiff. The fact that DNA testing subsequently revealed another individual's blood on the assault weapon is immaterial: "For the purposes of the qualified immunity analysis, we consider only those facts that were actually available to the police officers, or could reasonably have been perceived by them, at the moment they engaged in the challenged conduct." *Lowth, 82 F.3d at 567.*

## IV. Municipal Liability

To make out a claim against a municipality under *§ 1983,* a plaintiff must show that a municipal policy or custom resulted in a violation of his constitutional rights. *Monell v. Dep't of Social Services, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); Pembaur v. City of Cincinnati, 475 U.S. 469, 478-83, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).* "Though this does not mean that plaintiff must show that the municipality had an explicitly stated rule or regulation, a single incident alleged in a complaint, especially if it involved only actors below the policy making level, does not suffice to show **[*27]** a municipal policy." *Ricciuti, 941 F.2d at 123* (citations omitted). A *§ 1983* claim will not stand on the basis of vague and conclusory assertions. *Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).*

"In this Circuit, personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under *§ 1983.*" *Moffitt v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir. 1991)* (internal quotation omitted). Allegations that supervisory officials were deliberately and grossly negligent in training their subordinates in the police department and district attorney's office satisfy the "personal involvement" prerequisite to an award of damages against them under *§ 1983. Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997).* However, "a claim of inadequate training and supervision under *§ 1983* cannot be made out against a supervisory body without a finding of a constitutional violation by the persons supervised." *Ricciuti, 941 F.2d at 132,* citing *City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573, 89 L. Ed. 2d 806 (1986).* **[*28]**

Because the individual defendants in this case did not violate plaintiff's constitutional rights, plaintiff cannot sustain a claim of municipal liability. Even absent such a finding, plaintiff would not be entitled to relief on this basis. Plaintiff does not offer any evidence suggesting a specific failure in defendants' training; rather, plaintiff relies on vague and conclusory allegations about the failure of the New York Police Department to train its officers about probable cause. These allegations fall far short of what is required to subject defendants to municipal liability. Accordingly, defendants are entitled to summary judgment on the municipal liability claims.

## CONCLUSION

Because defendants had probable cause to arrest and prosecute plaintiff Williams, plaintiff cannot make out a claim for false arrest or malicious prosecution. At the very least, defendants had arguable probable cause for their actions, entitling them to qualified immunity from plaintiff's claims. In turn, plaintiff's claim for municipal liability fails as a matter of law. For the foregoing reasons, defendants' motion for summary judgment is HEREBY GRANTED.

SO ORDERED.

Dated:  **[*29]**  October 23, 2003

CONSTANCE BAKER MOTLEY

United States District Judge

LEXSEE 1996 U.S. DIST. LEXIS 11689

## JAMES WOO, Plaintiff, -against- CITY OF NEW YORK, JOHN DISKIN, ROBERT HARROP, STEPHEN DALY and WILLIAM McGUINNESS, Defendants.

93 Civ. 7007 (AJP)

## UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*1996 U.S. Dist. LEXIS 11689*

**August 12, 1996, Decided
August 14, 1996, FILED**

**SUBSEQUENT HISTORY:** [*1] As Amended September 6, 1996.

**DISPOSITION:** Summary judgment for defendants Harrop, Daly and McGuinness on all claims granted. Summary judgment to defendant Diskin on Woo's *§ 1981* and *§ 1985(3)* claims and the *§ 1983* claim for false arrest and malicious prosecution granted. Summary judgment for the City on Woo's *§ 1983* Monell claim granted. Summary judgment as to the state law respondeat superior claim against the City and defendant Diskin's cross-claim for indemnification against the City denied.

**COUNSEL:** For JAMES WOO, plaintiff: Paul A. Shneyer, Shneyer Shen, p.c., New York, NY. James Woo, Pro se, New York, NY.

For CITY OF NEW YORK, ROBERT HARROP, defendants: Felicia Dunn Jones, O. Peter Sherwood, Corporation Counsel of the City of N.Y., New York, NY USA. Felicia Dunn-Jones, PAUL A. CROTTY, Corporation Counsel of the City of NY, New York, NY. For JOHN DISKIN, defendant: Barbara Susan Albom, Lysaght, Lysaght & Kramer, P.C., Lake Success, NY. For STEPHEN DALY, defendant: Felicia Dunn-Jones, Corporation Counsel of the City of N.Y., New York, NY.

For JOHN DISKIN, cross-claimant: Barbara Susan Albom, Lysaght, Lysaght & Kramer, P.C., Lake Success, NY.

For CITY OF NEW YORK, cross-defendant: Felicia Dunn Jones, O. Peter Sherwood, Corporation Counsel of the City of N.Y., New York, NY USA. Felicia Dunn-Jones, PAUL A. CROTTY, Corporation Counsel of the City of NY, New York, NY.

For JOHN DISKIN, counter-claimant: Barbara Susan Albom, Lysaght, Lysaght & Kramer, P.C., Lake Success, NY.

For JAMES WOO, counter-defendant: Paul A. Shneyer, Shneyer Shen, p.c., New York, NY.

**JUDGES:** ANDREW J. PECK, United States Magistrate Judge

**OPINION BY:** ANDREW J. PECK

**OPINION**

*OPINION AND ORDER*

## ANDREW J. PECK, United States Magistrate Judge:

Plaintiff James Woo's action against police officer John Diskin, several other police officers and the City of New York arises from his arrest and alleged beating by off-duty police officer Diskin on August 10, 1992. Plaintiff Woo asserts claims pursuant to *42 U.S.C. §§ 1981, 1983, 1985(3)* and *1986* and for assault, battery, false arrest and malicious prosecution. Plaintiff Woo currently is pro se, having fired his counsel after the close of discovery and filing of the pretrial order. Woo filed the Third Amended Complaint while pro se, but it merely adds a claim against Captain [*2] McGuinness and otherwise repeats the Second Amended Complaint, which was prepared by counsel. (*See* City 3(g) PP 1-8.)

Defendants have moved to dismiss (as to defendant McGuinness), and for summary judgment as to the other

defendants, pursuant to *Fed. R. Civ. P. 12(b)(6)* and *56.* [1] The parties have consented to decision of this case by a Magistrate Judge pursuant to *28 U.S.C. § 636(c).*

   1    Corporation Counsel moved on behalf of defendants Robert Harrop, Stephen Daly, William McGuinness and the City of New York. Officer Diskin is separately represented.

   Defendants have not moved for summary judgment as to the state and *42 U.S.C. § 1983* claims against Officer Diskin for assault and battery.

For the reasons set forth below, the Court grants summary judgment dismissing all of plaintiff Woo's claims against defendants Harrop, Daly and McGuinness. The Court also grants the City summary judgment dismissing all of Woo's claims against the City except the state law respondeat superior claim. Additionally, [*3] the Court dismisses plaintiff Woo's *§ 1981* and *§ 1985(3)* claims against defendant Diskin, and the *§ 1983* and state law claims against Diskin for false arrest and malicious prosecution. The Court denies the City's motion for summary judgment on Officer Diskin's cross-claim for indemnification. (For a list of the surviving claims, *see* the "Conclusion" section below.)

## FACTS

On August 10, 1992 at approximately 11:00 p.m., off-duty police officer Diskin and plaintiff Woo had an altercation near the 59th Street Bridge exit ramp on East 60th Street between First and Second Avenues in Manhattan. (City 3(g) P 9; "Plaintiff's Statement Pursuant to Rule 3(g) in Opposition to Summary Judgment" ["Woo 3(g)"] P 3; Diskin 3(g) PP 2-3; Declaration of Joseph P. Baumgartner, Diskin's counsel, dated 2/16/96, P 4; Joint Pretrial Order, dated 10/23/95 [hereafter, "PTO"], Stipulated Facts PP 4-8.) The parties agree on little else about the event, and the Court thus will present the two conflicting stories.

### Woo's Version of the August 10, 1992 Incident

Plaintiff Woo, a taxi driver, was lawfully driving eastbound on 60th street from Second Avenue towards First Avenue [*4] as Officer Diskin's unmarked car approached him driving in the wrong direction. (Woo 3(g) PP 3, 5; Woo 3/6/96 Aff. P 5; PTO, Woo Contentions of Fact PP 3-4; Woo Dep. at 71.) After Woo tapped his horn, Diskin stopped his car, got out, walked to the passenger side of Woo's taxi, and "spat a mouthful of saliva onto plaintiff's face." (Woo 3(g) P 6; Woo Aff. P 5; Woo Dep. at 71-72.) Officer Diskin screamed "Don't you honk at me!" and returned to his car. (Woo 3(g) P 7; Woo Aff. P 5; Woo Dep. at 72.) Woo did not know Diskin was a police officer. (Woo 3(g) P 32; Woo Aff. P 8.)

Woo drove his taxi in front of Diskin's car in an effort to prevent Diskin from leaving. (Woo 3(g) P 8; Woo Aff. P 6; Woo Dep. at 72.) Woo's bumper hit Diskin's bumper with sufficient force that the noise caused some people in neighboring buildings to look out their windows. (*Id.*) Officer Diskin again got out of his car, and lunged for the passenger side door latch of Woo's car. (Woo 3(g) P 9.) Woo became fearful of Officer Diskin, who was 6'2" and 210 pounds, and so Woo backed up his taxi and tried to drive forward around Diskin's car in order to escape. (*Id.* PP 10-11.) In so doing, Woo's left front bumper [*5] collided with Diskin's right rear bumper, but without damage. (*Id.* P 12.) Woo also hit a car coming off the bridge, causing slight damage to the bumper. (*Id.* P 13.)

Officer Diskin yanked open Woo's door and Woo held up a tire iron which he had under his seat. (*Id.* P 14; Woo Dep. at 73-74.) Officer Diskin pulled the tire iron from Woo's hand and threw it to the ground. (Woo 3(g) P 15.) Woo admits that the tire iron came in contact with Officer Diskin's body as he grabbed it from Woo. (Woo Dep. at 74.) Officer Diskin pulled out a revolver, and Woo raised both hands overhead. (Woo 3(g) P 16; Woo Dep. at 74.) After glancing around, Diskin struck Woo's left eye with his gun, and when he saw blood, said "I hope you lose your eye!" (Woo 3(g) PP 17-18; Woo Dep. at 74-75.) Diskin pulled Woo out of the taxi and onto the ground, with Woo's face on the pavement. (Woo 3(g) P 19; Woo Dep. at 75.) Throughout this entire confrontation, Woo asserts that Officer Diskin never identified himself as a police officer. (Woo 3(g) P 32.)

Sergeant Daly arrived within minutes, handcuffed Woo, and had a private conversation with Officer Diskin. (*Id.* P 20; Woo Dep. at 75.) Officer Harrop, who [*6] was Sergeant Daly's driver, arrested Woo. (Woo 3(g) P 21.) Woo was taken to the 19th Precinct for processing and three hours later was driven to Metropolitan Hospital. (*Id.* P 22; Woo Dep. at 76.)

### The City's and Diskin's Version of the Incident

At the time of the incident, defendant Diskin was off-duty, dressed in civilian clothes, and driving his private car (a red Volkswagen) to work at the 19th Precinct located on 67th Street between Lexington and Third Avenues. (City 3(g) PP 9-10; Diskin 3(g) PP 2-3; Diskin Dep. at 82-83, 96.) Diskin was scheduled to begin work at 11:15 p.m. (City 3(g) P 11; Diskin Dep. at 82-83.)

Diskin exited the 59th Street Bridge exit ramp at East 60th Street. (City 3(g) P 11; Dunn-Jones Aff. Ex. B; Diskin Dep. at 58.) Diskin claims that his car was travelling in the correct direction and was struck broadside by Woo. (PTO, Diskin's Contentions of Fact PP 16-17.) [2] At some point, Diskin's car and Woo's yellow taxi came to a stop. (City 3(g) P 12; Diskin Dep. at 99.) Diskin alleges

that Woo's taxi hit his car. (*See* Baumgartner Dec. PP 4-8; Diskin Dep. at 108.) Diskin got out of his car and approached Woo's taxi. (City 3(g) P 15; Baumgartner [*7] Dec. P 4.) Woo put his taxi in reverse and backed up in a westerly direction down East 60th Street. (City 3(g) P 16.) In so doing, Woo's driver's side mirror hit Diskin on the forearm. (*Id.* P 17; Diskin Dep. at 51-56.) Woo put his taxi in drive, drove around a triangular cement island, and Woo's front bumper hit Diskin's rear bumper. (City 3(g) P 18.) Woo backed up and struck a vehicle driven by motorist Felicia Maisonave. (*Id.* P 19; *see* Baumgartner Dec. P 5.)

    2   However, at least one police report appears to reflect that Diskin was travelling in the wrong direction on 60th Street. (Dunn-Jones Aff. Ex. G: "Name Identification Card".) Additionally, Officer Ortiz reported that he had, on several occasions, stopped Diskin off-duty and admonished him for going the wrong way on East 60th Street, and that when he responded to the Woo incident scene, Officer Diskin's car was facing the wrong way. (Dunn-Jones Aff. Ex. J: Sergeant Edward Incle's Investigating Officer's Report dated 3/11/94.)

Diskin pulled [*8] open the driver's side door of Woo's taxi. (City 3(g) P 20.) Woo picked up a tire iron from the taxi's front seat and swung it at Diskin, striking him in the chest area several times. (City 3(g) PP 21-22; Diskin 3(g) P 4; Diskin Dep. at 121-23.) Diskin identified himself as a police officer (Baumgartner Dec. P 5; Diskin Dep. at 156),[3] took his revolver out and poked the barrel of the gun into Woo's face. (City 3(g) P 23; Baumgartner Dec. P 5; Diskin Dep. at 156.) Diskin held Woo face down on the ground and placed Woo under arrest for assault. (City 3(g) PP 24-25; Diskin 3(g) P 5; Diskin Dep. at 28-29, 37.) Shortly thereafter, uniformed police officers arrived and handcuffed Woo. (City 3(g) P 26; Diskin 3(g) P 6; Baumgartner Dec. P 6; Diskin Dep. at 93.)

    3   The City does not assert that Diskin identified himself as a police officer at any time during the confrontation. The City also does not assert that Diskin was acting under color of state law. (*Compare* PTO, Stipulations of Fact P 3; PTO, Woo Contentions of Fact P 2; PTO, Diskin Contentions of Fact P 2; *with* PTO, City Contentions of Fact.)

[*9] *Woo's Arrest and the Police Investigations Following the Incident*

Sergeant Daly, a Patrol Sergeant at the 19th Precinct, responded to the scene and spoke with Diskin. (City 3(g) P 27; Diskin Dep. at 99-100.) Officer Diskin

informed Sergeant Daly that Woo had assaulted him and had struck his vehicle. (City 3(g) P 28; Diskin Dep. at 99-100.) Sergeant Daly obtained the names, addresses and telephone numbers of four witnesses to the incident and submitted them to Captain McGuinness and the New York County District Attorney's Office. (City 3(g) P 30; Dunn-Jones Aff. Ex. C: Police Report of Captain William McGuinness.) Captain McGuinness contacted the witnesses by telephone that evening. (City 3(g) P 31; Dunn-Jones Aff. Ex. C.)[4]

    4   The four witnesses interviewed were (1) Felicia Maisonave, (2) Andrew Eaton, (3) Luana Mango, and (4) Clark Berkhoudt. (*Id.*) None of the witnesses saw the occurrence from beginning to end. (*See* Woo 3(g) Ex. S: Police Report of Sergeant Edward Incle, dated 5/24/94; Dunn-Jones Aff. Ex. C at P 7; Dunn-Jones Aff. Ex. G: Investigation Bureau Reports.)

[*10] Officer Diskin was driven by a police car to Beth Israel Hospital. (City 3(g) P 32.) Woo was driven by police car to the 19th Precinct station house, where his arrest was processed. (City 3(g) P 33; Woo 3(g) P 22.) Three hours later, Woo was driven to Metropolitan Hospital. (Woo 3(g) P 22.) Woo was interviewed at the hospital by Captain McGuinness. (City 3(g) P 34; Dunn-Jones Aff. Ex. C, P 9.)

On August 18, 1992, Woo was arraigned at Metropolitan Hospital and charged with two counts of second degree assault, possession of a weapon in the fourth degree, and resisting arrest. (City 3(g) P 35; PTO, Stipulated Facts PP 18-22.)

*The Dismissal of the Charges Against Woo*

On February 8, 1993, the Criminal Court (New York County) dismissed all charges against Woo pursuant to Criminal Procedure Law § 30.30, New York's speedy trial provision. (Dunn-Jones Aff. Ex. D: Affidavit of Assistant District Attorney Andrew M. Lankler, dated 12/13/95, P 2; *see* Diskin 3(g) PP 22-29; PTO, Stipulated Facts P 23.)

*Woo's Complaint*

Woo's third amended complaint alleges ten causes of action: (1) assault (against Diskin); (2) battery (Diskin); (3) false arrest (all defendants); [*11] (4) malicious prosecution (all defendants); (5) respondeat superior (the City); (6) *42 U.S.C. § 1983* municipal liability (the City); (7) *42 U.S.C. § 1983* (all defendants); (8) *42 U.S.C. § 1981* (Diskin); (9) *42 U.S.C. § 1985(3)* (all defendants); and (10) *42 U.S.C. § 1986* (McGuinness).

*ANALYSIS*

1996 U.S. Dist. LEXIS 11689, *

**1. THE CITY IS GRANTED SUMMARY JUDG-MENT ON WOO'S 42 U.S.C. § 1983 CLAIM SINCE WOO HAS FAILED TO ESTABLISH THAT THE CITY MAINTAINED A POLICY OR CUSTOM OF UNCONSTITUTIONAL BEHAVIOR**

It is well established that a municipality may not be held liable under § 1983 solely upon the basis of respondeat superior. *E.g., Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978); Covington v. City of New York, 916 F. Supp. 282, 288 (S.D.N.Y. 1996)* (Peck, M.J.); *Zamakshari v. Dvoskin, 899 F. Supp. 1097, 1109 (S.D.N.Y. 1995)* (Peck, M.J.). Thus, in order to hold a municipality liable under § 1983 for the unconstitutional acts of its employees, the plaintiff must plead and prove that the violation of constitutional rights resulted from a municipal custom or policy. *E.g., Pembaur* [*12] *v. City of Cincinnati, 475 U.S. 469, 478-83, 106 S. Ct. 1292, 1297-300, 89 L. Ed. 2d 452 (1986); Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983); Covington v. City of New York, 916 F. Supp. at 288.* Absent a showing of a causal link between an official policy or custom and the plaintiff's injury. *Monell* prohibits a finding of liability against the City. *Monell v. Department of Social Services,* 438 U.S. at 694 n.58, 98 S. Ct. 2037 n.58; *Batista v. Rodriguez, 702 F.2d at 397.*

In *Covington v. City of New York,* the Court summarized the law in this area as follows:

A plaintiff asserting liability against a supervisor under § 1983 need not show that the municipality had an explicitly stated rule or regulation. *See Villante v. Department of Corrections of the City of New York, 786 F.2d 516, 519 (2d Cir. 1986).* Rather, the inference that such a policy existed may be drawn from plaintiff's proffer of circumstantial evidence, such as evidence that the municipality (1) so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within the jurisdiction, *see, e.g., City* [*13] *of Canton, Ohio v. Harris, 489 U.S. 378, 387-92, 109 S. Ct. 1197, 1204-06, 103 L. Ed. 2d 412 (1989),* or (2) had notice of but repeatedly failed to make any meaningful investigation into (*i.e.,* were deliberately indifferent to) charges of misconduct by lower level employees (*e.g.,* charges that police officers used excessive force), *see, e.g., Fiacco v. City of Rensselaer, New York, 783 F.2d 319, 327-28 (2d Cir. 1986), cert.*

*denied, 480 U.S. 922, 107 S. Ct. 1384, 94 L. Ed. 2d 698 (1987).*

*916 F. Supp. at 288.*

In his third amended complaint, plaintiff Woo alleges that:

Upon information and belief, defendants have in the past falsely arrested individuals, committed assault and battery against such individuals and solicited improper prosecutions of such individuals, and allowed police officers to make false entries in official police department records to cover up and hide assaults and batteries by police officers.

Defendant City of New York has failed to take the steps to discipline, train, supervise or otherwise correct the improper illegal conduct of defendant officers.

(Cplt. PP 73-74.) Further, in his 3(g) statement, plaintiff [*14] Woo argues that "the Police Department of the City of New York has a policy, custom or practice which causes and deprives plaintiff's civil rights. The Department does not effectively and objectively investigate wrongdoing claims against officers." (Woo 3(g) P 43; *see also* PTO, Woo Contentions of Fact PP 25-27.)

Plaintiff Woo has failed to present evidence of even a single incident of such police misconduct or failure to train, much less the existence of an official policy or custom. The Court notes that while Mr. Woo is now pro se, he was represented by counsel throughout the discovery process, and had ample opportunity to develop evidence regarding prior incidents of false arrest or excessive force in the police department.

Conclusory allegations by a plaintiff of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a *Monell* claim, absent the production of evidence to back up such an allegation. *See, e.g., Furlow v. City of New York, 1994 U.S. Dist. LEXIS 18316, 90 Civ. 3956, 1994 WL 714340 at *10 (S.D.N.Y. Dec. 21, 1994)* (summary judgment for defendants on *Monell* claim finding that "but for general, conclusory allegations in [plaintiff's]* [*15] complaint, [plaintiff] has produced no evidence from which a reasonable jury could infer that the City failed to train effectively the officers involved or that the actions of the individual officers were representative of any policy or custom of the City."); *Golino v. City of New Haven, 761 F. Supp.*

*962, 972-73* (D. Conn.) (summary judgment for defendant police chief on *Monell* claim, holding that plaintiff's own alleged unconstitutional arrest alone does not establish a policy or custom), *aff'd, 950 F.2d 864 (2d Cir. 1991), cert. denied, 505 U.S. 1221, 112 S. Ct. 3032, 120 L. Ed. 2d 902 (1992).*

Plaintiff Woo points only to his own alleged assault and false arrest and the Police Department's alleged "cover up" that followed it as evidence of the Police Department's policy. Even if Woo were to prevail at trial on his claim that he was falsely arrested and assaulted, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 123 (2d Cir. 1991); see also, e.g., Nocera v. New York City Fire Commissioner,* [*16] *921 F. Supp. 192, 204 (S.D.N.Y. 1996)* ("Proof of a single incident of unconstitutional activity is insufficient to demonstrate the existence of a policy."); *Gayle v. Ward, 1989 U.S. Dist. LEXIS 14301, 88 Civ. 0843, 1989 WL 146791 at *3 (S.D.N.Y. Nov. 30, 1989)* (summary judgment for defendants Ward and Koch where "not even the barest facial showing" of wrongdoing on their part; "The inference [of an official policy] may not be drawn from an isolated instance of wrongdoing, however, unless the single instance is singularly egregious and evidences 'acquiescence in a prior pattern of misconduct.'"); *Anderson v. City of New York, 657 F. Supp. 1571, 1575 (S.D.N.Y. 1987)* ("More recently, however, the Supreme Court held that a single incident -- even one involving excessive force -- could not prove the existence of a policy of insufficient training.") (citing *Oklahoma City v. Tuttle, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436, 85 L. Ed. 2d 791 (1985); Landesman v. City of New York, 501 F. Supp. 837, 841-42 (E.D.N.Y. 1980)* ("'We agree that, absent more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct, a policy could not ordinarily be inferred from [*17] a single instance of illegality such as a first arrest without probable cause or with excessive force.'") (quoting *Turpin v. Mailet, 619 F.2d 196, 202 (2d Cir.), cert. denied, 449 U.S. 1016, 101 S. Ct. 577, 66 L. Ed. 2d 475 (1980)).*

The Court also needs to consider, however, evidence of prior complaints against certain of the defendant officers that the City candidly submitted. The City admits that as "of the date of plaintiff's arrest, there existed one substantiated or conciliated civilian complaint against defendants Diskin and Daly and one departmental charge against Harrop." (City Br. at 21.) The civilian complaint against Officer Diskin involved an allegation that, while on duty and in uniform, Diskin shoved a taxi driver to whom he later issued a parking ticket. *(Id.)* The complaint was investigated by the Civilian Complaint Review Board and found to be substantiated. *(Id.)* Thereafter, Diskin was punished by the Police Department with a Command Discipline. *(Id.)*

Officer Harrop was brought up on departmental charges for failing to report the misconduct of another officer. *(Id.)* He pled guilty to the charge and was penalized with the loss of ten vacation [*18] days. *(Id.* at 21-22.) The City further acknowledges that, prior to Woo's arrest, a civilian complaint of discourtesy against Daly was filed with the Civilian Complaint Review Board. *(Id.* at 22.) The complaint was classified as "conciliated" and Daly received Sensitivity Training. *(Id.)*

Thus, at the time of plaintiff Woo's arrest, the four defendant officers collectively had three complaints in their records. The Police Department responded in all three instances by disciplining the officers. Plaintiff Woo has not alleged that any of these incidents evidenced that the Police Department had a policy of failing to discipline officers for these offenses. Moreover, none of these instances involved alleged false arrest and excessive force. Thus, these three incidents do not suffice to establish that the City had a policy of failing to investigate or discipline its officers. *See, e.g., Stengel v. City of Hartford, 652 F. Supp. 572, 574 (D. Conn. 1987)* (allegation that officer had not been disciplined for two prior complaints insufficient because plaintiff failed to allege how investigation insufficient).

Woo attempts to buttress his *Monell* claim with incidents [*19] that occurred subsequent to his arrest as evidence of the City's alleged failure to train or discipline its officers. Woo points to a civilian charge pending against Officer Diskin for making harassing phone calls that occurred in February and March 1993. (Woo Aff. P 21.)

Plaintiff Woo, however, cannot establish that incidents that occur after the event in question caused his injury. *See, e.g., Sango v. City of New York, 1989 U.S. Dist. LEXIS 18212, 83 CV 5177, 1989 WL 86995 at *20 n.2 (E.D.N.Y. July 25, 1989)* ("conduct occurring after the incident at issue lacks the requisite 'affirmative link' to plaintiffs' injuries -- that is plaintiffs cannot establish causation. . . . Evidence of a municipal policymaker's response to misconduct can be helpful in determining the municipal policy existing before the incident . . . , but it cannot alone serve as the predicate for municipal liability."); *Anderson v. City of New York, 657 F. Supp. 1571, 1576 (S.D.N.Y. 1987)* ("Plaintiff, however, must link the behavior in question to the policy of failure to discipline -- for example, the officer must have known of the policy at the time he allegedly committed the civil rights violations."); *Tompkins* [*20] *v. Frost, 655 F. Supp. 468, 472 (E.D. Mich. 1987)* (where plaintiff claimed that the county ratified the officer's conduct by failing to investigate an alleged incident of excessive force, court held

that "wrongful conduct after an injury cannot be the proximate cause of the same injury").

Thus, Woo has failed to produce any evidence from which a reasonable juror could infer that the City had a policy or practice of either failing to investigate or failing to train its officers concerning the use of excessive force and false arrest.

**II. ALL DEFENDANTS ARE GRANTED SUMMARY JUDGMENT ON WOO'S 42 U.S.C. § 1983 AND STATE LAW CLAIMS BASED ON MALICIOUS PROSECUTION AND FALSE ARREST, SINCE THE DISMISSAL OF WOO'S CRIMINAL PROCEEDING ON SPEEDY TRIAL GROUNDS IS NOT A TERMINATION IN PLAINTIFF'S FAVOR**

Woo's third amended complaint asserts a claim pursuant to *42 U.S.C. § 1983* for malicious prosecution and false arrest, and state law claims for malicious prosecution and false arrest, against Officer Diskin, Officer Harrop, Sergeant Daly and Captain McGuinness. (Cplt. PP 60-67, 78-80.) [5] Defendants have moved for summary judgment on these claims on the ground that there was no [*21] favorable termination of Woo's criminal proceeding on the merits, since the criminal case was dismissed pursuant to *New York Criminal Procedure Law § 30.30*. (City Br. at 9-13.) The Court agrees. [6]

5   Although the complaint does not specify that the *42 U.S.C. § 1983* claim against defendants Harrop, Daly and Diskin is based upon false arrest and malicious prosecution, the Court has made that inference, since those claim are the only constitutional violations the three defendants are alleged to have committed. (*See* Cplt. PP 60-67.) The *§ 1983* claim against Officer Diskin also includes a claim for use of excessive force, and Officer Diskin has not moved for summary judgment on that part of the *§ 1983* claim. The *§ 1983* excessive force claim against Officer Diskin obviously raises disputed questions of material fact as to whether the force used in the incident was justified or excessive under the circumstances.

6   The City has also moved to dismiss the false arrest claims as against Captain McGuinness on statute of limitations grounds. (*See* City Br. at 7-8.) A false arrest claim accrues at the time of arrest -- here, no later than August 18, 1992 -- and has a three-year statute of limitations. *See, e.g., Covington v. City of New York, 916 F. Supp. 282, 285 (S.D.N.Y. 1996)* (Peck, M.J.) (citing cases). The three-year statute of limitations therefore expired on August 18, 1995. Woo was granted permission to serve his third amended complaint on Captain McGuinness on November 15, 1995.

(*See* 11/15/95 oral arg. Tr. at 17.) That is after the expiration of the three-year limitation period. Woo cannot benefit from *Fed. R. Civ. P. 15(c)(3)*, because he clearly knew Captain McGuinness' identity, since he interviewed Woo at the hospital. (*See* Woo 3(g) P 41.) Thus, the state false arrest and *§ 1983* false arrest claims must be dismissed against Captain McGuinness on the additional ground of the statute of limitations.

The statute of limitations does not preclude the malicious prosecution claim (and the City has not raised the statute of limitations as a defense to that claim), because a malicious prosecution claim does not accrue until the criminal proceedings are concluded. *See, e.g., Covington v. City of New York, 916 F. Supp. at 286 n.2* (citing *Murphy v. Lynn, 53 F.3d 547, 548 (2d Cir. 1995); Singleton v. City of New York, 632 F.2d 185, 193 (2d Cir. 1980), cert. denied, 450 U.S. 920, 101 S. Ct. 1368, 67 L. Ed. 2d 347 (1981)*).

[*22]  A "claim for malicious prosecution brought under *§ 1983* is governed by state law." *Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995)*. Thus, under both *§ 1983* and "under New York law, a plaintiff suing for malicious prosecution must establish: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) *termination of the proceeding in plaintiff's favor*; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions. . . . *Termination of the criminal charges in plaintiff's favor is an essential element of the claim.*" *Id.* (emphasis added; citing, *inter alia, Hollender v. Trump Village Cooperative, Inc., 58 N.Y.2d 420, 425-26, 461 N.Y.S.2d 765, 768, 448 N.E.2d 432 (1983)); see also Covington v. City of New York, 94 CV 3382, 1995 WL 322222 at *3 (E.D.N.Y. May 23, 1995)*.

Plaintiff bears the burden of establishing that a decision is indicative of his innocence:

> An acquittal is the most obvious example of a favorable termination. In many instances, however, criminal proceedings are terminated in a manner that does not establish either guilt or innocence. *In the absence* [*23] *of a decision on the merits, the plaintiff must show that the final disposition is indicative of innocence.*

*Russell v. Smith, 68 F.3d at 35 (2d Cir. 1995)* (emphasis added).

Plaintiff Woo has not met his burden. Defendants have submitted an affidavit from Assistant District At-

torney Andrew M. Lankler, who prosecuted the criminal case against Woo, stating that on February 8, 1993, all criminal charges against Woo were dismissed under the New York speedy trial statute, CPL § 30.30. (Dunn-Jones Aff. Ex. D: Lankler Aff. P 2; *see also* PTO, Stipulated Facts P 23.)

In *Singleton* v. *City of New York*, the Second Circuit held that, in order to assert a § 1983 claim based on malicious prosecution, the plaintiff must demonstrate that the underlying criminal proceeding terminated "in some manner indicating that the person was not guilty of the offense charged." *632 F.2d 185, 195 (2d Cir. 1980), cert. denied, 450 U.S. 920, 101 S. Ct. 1368 (1981)*. The Second Circuit held that a hung jury and an "adjournment in contemplation of dismissal" pursuant to N.Y. CPL § 170.55 does not constitute termination in favor of the defendant, since such a dismissal "leaves open **[*24]** the question of the accused's guilt." *Id., 632 F.2d at 193-95*.

The *Singleton* rule also applies to state law malicious prosecution actions. In *Hollender* v. *Trump Village*, the New York Court of Appeals held that:

> In a malicious prosecution action, it is for the one who brings the suit to establish that the criminal proceeding allegedly instigated by the defendant terminated in favor of the accused. Indeed, it is "only when [the] * * * final disposition is such as to indicate * * * * innocence" that this burden is met. So viewed, the Appellate Division's dismissal of the malicious prosecution claim was correct. For the adjournment in contemplation of dismissal, being as unadjudicative of innocence as it was of guilt, by its very nature operated to bar recovery.

*58 N.Y.2d at 425-26, 461 N.Y.S.2d at 768* (asterisks in original; citations, including to *Singleton*, omitted).

Because the plaintiff in a malicious prosecution action has the burden of proving that disposition of the criminal case indicates innocence, and because a speedy trial dismissal (like an adjournment in contemplation of dismissal) is as unadjudicative of innocence as guilt, the courts **[*25]** have dismissed § 1983 and state law malicious prosecution actions where the criminal charges were dismissed for a speedy trial violation. "This Court has previously held that dismissal of proceedings on speedy trial grounds is, as a matter of law, not a favorable termination for purposes of a § 1983 . . . malicious prosecution suit." *Rodriguez v. State of New York, 1996 U.S. Dist. LEXIS 5353, 95 Civ. 3639, 1996 WL 197749 at *2 (S.D.N.Y. April 23, 1996)* (citing cases); *see also,*

*e.g., Covington* v. *City of New York, 1995 WL 322222 at *3-4* ("Because a dismissal for failure to comply with New York's speedy trial requirement is no more probative of innocence than it is of guilt, the court concludes that, for purposes of establishing a malicious prosecution claim, the proceedings were not terminated in plaintiff's favor."); *Martin v. Adler, 135 Misc. 2d 383, 389, 515 N.Y.S.2d 400, 405 (Sup. Ct. Rockland Co. 1987)* ("because the charges were dropped for neglect to prosecute, the merits were never reached; the absence of an affirmative finding of innocence thus forecloses a cause of action for malicious prosecution to the plaintiffs.").

> 7    But see *Davis v. New York City Police Officers, 1996 U.S. Dist. LEXIS 1363, 93 Civ. 7963, 1996 WL 54358 at *2 (S.D.N.Y. Feb. 8, 1996)* (determination of whether speedy trial dismissal is favorable to criminal defendant raises fact questions that rarely is amenable to summary judgment). *Davis* relied on *Loeb v. Teitelbaum, 77 A.D.2d 92, 432 N.Y.S.2d 487 (2d Dep't 1980)*, and other lower state court decisions from that period (or earlier). *Davis, 1996 U.S. Dist. LEXIS 1363, 1996 WL 54358 at *2 n.4*. In *Witcher v. Children's Television Workshop, 187 A.D.2d 292, 294-95, 589 N.Y.S.2d 454, 456 (1st Dep't 1992)*, the First Department declined to follow *Loeb*, finding that *Loeb*'s conclusions "appear contrary to the more recent pronouncements of the Court of Appeals," including *Hollender v. Trump Village*.

**[*26]** In *Roesch v. Otarola, 980 F.2d 850 (2d Cir. 1992)*, the Second Circuit extended its holding in *Singleton* to include § 1983 claims sounding in false arrest or false imprisonment. "The policy considerations that motivated the Court in *Singleton* are equally appropriate in the context of a *section 1983* claim sounding in false imprisonment or false arrest." *Id. at 853-54*. The Court explained its reasoning for such an extension as follows:

> "Having decided that the criminal charge at issue in the state court was not disposed of in a manner favorable to the [appellant], thereby precluding the [appellant] from pressing his malicious prosecution claim in this *section 1983* action, it would be anomalous to allow the [appellant] to challenge here the existence of probable cause for his arrest and incarceration for that *same* criminal charge."

*980 F.2d at 853* (emphasis and brackets in original, quoting *Konon v. Fornal, 612 F. Supp. 68, 71 (D. Conn. 1985)*). And in *Rodriguez v. State of New York, 1996*

*U.S. Dist. LEXIS 5353, 1996 WL 197749* at *2, Judge Stein held that dismissal on speedy trial grounds is "not a favorable termination for purposes of a *§ 1983* false arrest [*27] or malicious prosecution suit." *

> 8 *But see Hollender v. Trump Village, 58 N.Y.2d at 425, 461 N.Y.S.2d at 768* (upholding dismissal of malicious prosecution claim where criminal charges ended with adjournment in contemplation of dismissal, but reversing dismissal of false imprisonment charge; Court noted that while on malicious prosecution action, the plaintiff has the burden of showing that the criminal charge ended in his favor, on false imprisonment claim "the burden of establishing that the detention was privileged is on those charged with the commission of the tort"); *cf. Martin v. Adler, 135 Misc. 2d at 389, 515 N.Y.S.2d at 404-05* (upholding false arrest claim while granting motion to dismiss malicious prosecution claim where underlying criminal charges were dropped for failure to prosecute). Despite this seemingly contrary New York Court of Appeals decision as to false arrest, this Court is required to follow the Second Circuit's more recent holding in *Roesch* that the Court should treat malicious prosecution and false arrest claims the same in deciding whether the prior criminal proceeding terminated in plaintiff's favor.

[*28] Thus, plaintiff Woo fails to state a claim pursuant to *42 U.S.C. § 1983* or state law against any defendant for false arrest or malicious prosecution.

### III. ALL DEFENDANTS ARE GRANTED SUMMARY JUDGMENT ON WOO'S §§ 1981, 1985(3) AND 1986 CLAIMS, BECAUSE WOO HAS FAILED TO PRESENT ANY EVIDENCE OF DISCRIMINATORY INTENT *

> 9 The Court notes with some surprise that, although the City apparently intended to move for summary judgment on the *42 U.S.C. §§ 1981, 1985(3)* and *1986* claims along with the other claims, they failed to address them in their motion papers. By Order dated July 25, 1996, the Court noted that its review of the record indicated that summary judgment might be appropriate on those claims and directed plaintiff Woo to file any papers opposing summary judgment. After requesting and receiving an extension of time to file papers, Mr. Woo filed a 1-page letter that merely cited to three cases, but contained no evidence of alleged racial animus or conspiracy by any defendant. The cases cited by Mr. Woo are of no help to him on the summary judgment motion.

In *White v. Frank, 680 F. Supp. 629, 640 (S.D.N.Y. 1988), appeal dismissed, 855 F.2d 956 (2d Cir. 1988)*, the Court upheld allegations of conspiracy in a complaint against a motion to dismiss. On summary judgment, however, Mr. Woo must submit evidence, not allegations, and he has not done so. *Hampton v. Hanrahan, 600 F.2d 600, 623-24 (7th Cir. 1979)*, involved a civil rights action by the Black Panther Party in which the evidence of racially motivated conspiracy included F.B.I. documents indicating an intent to "neutralize" the Panthers as a political voice on racial issues. Finally, in *Bell v. City of Milwaukee, 746 F.2d 1205, 1262 (7th Cir. 1984)*, the evidence showed that police officers accidentally killed a black youth, then planted a knife on him to justify the shooting, and conspired to cover up the shooting. *Id. at 1215-16, 1256*. The officers also made racially derogatory comments. *Id. at 1215, 1217, 1259*. Obviously, these cases cannot, and do not, supply what is missing from Mr. Woo's case here -- any evidence of racial motivation or from which such motivation can be inferred.

The Court will expect less sloppy and more thorough papers from Corporation Counsel in the future.

### [*29] A. § 1981 Claim

In his complaint, plaintiff Woo asserts a claim under *42 U.S.C. § 1981* [10] against Officer Diskin on the grounds that:

> Defendant Diskin has admitted acting discriminatorily against Asians and other minorities, and upon information and belief, has violated the rights of other minorities and violated Mr. Woo's rights as described herein because of discriminatory animus in violation of *42 U.S.C. § 1981*.

(Cplt. P 81.)

> 10 *42 U.S.C. § 1981(a)* provides:
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . .

Although § 1981 applies principally to contract disputes, it has also been used in some circuits (including this one) to remedy racially motivated abuse of state authority. *See, e.g., Rivera v. United States, 728 F. Supp. 250, 261 (S.D.N.Y. 1990)* (citing cases), *aff'd, 928 F.2d 592 (2d Cir. 1991).*

[*30] The law is clear that in order to state a claim under § 1981, the plaintiff must plead and prove facts which establish that defendants' actions were racially motivated and purposefully discriminatory. *E.g., General Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391, 102 S. Ct. 3141, 3150, 73 L. Ed. 2d 835 (1982); Albert v. Carovano, 851 F.2d 561, 571 (2d Cir. 1988).* Moreover, in order to survive summary judgment on a § 1981 claim, a plaintiff must provide more than conclusory assertions of discrimination. *E.g., Patterson v. General Motors Corp., 631 F.2d 476, 482 (7th Cir. 1980), cert. denied, 451 U.S. 914, 101 S. Ct. 1988, 68 L. Ed. 2d 304 (1981); Rodriguez v. City of New York, 1988 U.S. Dist. LEXIS 6516, 85 CV 1873, 1988 WL 68853 at *2 (E.D.N.Y. May 13, 1988).*

Beyond the conclusory allegations in the complaint, however, plaintiff Woo has not produced a scintilla of evidence that Officer Diskin's activities were racially motivated. In fact, the Court can not even find in the record any proof of Woo's allegation in his complaint that Officer Diskin admitted to "acting discriminatorily against Asians and other minorities." (Cplt. P 82.) Plaintiff Woo has [*31] failed to present any evidence, for example, that Diskin (i) made any discriminatory statements towards Woo during the confrontation, (ii) had assaulted other minorities in the past or (iii) had made derogatory racial comments in the past. In fact, plaintiff Woo failed to even make mention of Officer Diskin's discriminatory motivation in either his 3(g) statement or his motion papers.

Thus, the Court grants summary judgment for defendant Diskin because of the lack of any support for plaintiff's allegations. *See Rodriguez v. City of New York, 1988 U.S. Dist. LEXIS 6516, 1988 WL 68853 at *3* (summary judgment for defendant police officers on § 1981 claim because plaintiff failed to submit evidence of any racial motivation to injure plaintiff by officer involved in his arrest and alleged beating); *see also, e.g., Smith v. Savings Bank of Rockland County, 1992 U.S. Dist. LEXIS 17487, 91 Civ. 3088, 1992 WL 350743 at *4 (S.D.N.Y. Nov. 16, 1992)* (summary judgment for defendant on § 1981 claim since plaintiff produced no evidence of discriminatory intent except an unsubstantiated hearsay statement and conjecture); *Harrington v. Local 338 Retail, Wholesale and Chain Store Food Employees Union, AFL-CIO, 1988 U.S. Dist. LEXIS 4417, 82 Civ. 8106, [*32] 1988 WL 52873 at *1 (S.D.N.Y. May 17,*

1988) (summary judgment for defendant because *"section 1981 requires a showing that defendant itself intentionally discriminated against plaintiff, not merely that it acquiesced in or failed to prevent the discriminatory conduct of plaintiff's employer").*

**B. § 1985(3) Claim**

The Second Circuit has held that:

> The four elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087-88 (2d Cir. 1993), cert. denied, 116 S. Ct. 88 (1995).*

"The scope of § 1985(3) is narrower than that of § 1983." *Blankman v. County of Nassau, 819 F. Supp. 198, 205 (E.D.N.Y.), aff'd, 14 F.3d 592 (2d Cir. 1993)).* Additionally, plaintiff must show that the conspiracy was "motivated by 'some racial or perhaps otherwise [*33] class-based, invidious discriminatory animus behind the conspirators' action.'" *Mian v. Donaldson, 7 F.3d 1085 at 1088* (quoting *United Bhd. of Carpenters, Local 610, AFL-CIO v. Scott, 463 U.S. 825, 829, 103 S. Ct. 3352, 3356, 77 L. Ed. 2d 1049 (1983)); see also, e.g., Blankman v. County of Nassau, 819 F. Supp. at 205.* The Supreme Court has held that "'discriminatory purpose' . . . implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 279, 99 S. Ct. 2282, 2296, 60 L. Ed. 2d 870 (1979).*

As previously noted, plaintiff Woo has failed to produce any evidence whatsoever, beyond conclusory statements, that Officer Diskin or any of the other defendant officers beat, arrested or prosecuted Woo because he was Asian. Beyond Woo's conclusory allegation in his complaint that "Defendants were motivated by racial animus in their conduct against the plaintiff" (Cplt. P 86; *see also* PTO, Woo Contentions of Fact P 14), Woo has failed to produce any evidence of underlying [*34] facts supporting this allegation. Absent any evidence of discriminatory animus, the Court must dismiss Woo's § 1985(3) claim. *See, e.g., Presnick v. Berger, 837 F.*

*Supp. 475, 480 (D. Conn. 1993)* (summary judgment for defendants on § 1983(3) claim where "plaintiff failed to make any factual allegations to support a claim of a civil rights violation" and "there is no evidence whatsoever on this record of any racial or otherwise class-based invidiously discriminatory animus."); *Thornton v. City of Albany, 831 F. Supp. 970, 981 (N.D.N.Y. 1993)* (summary judgment for defendants on § 1985(3) claim when plaintiff's only evidence of discriminatory animus was a race neutral comment by police officer); *Smith v. Savings Bank of Rockland County, 1992 U.S. Dist. LEXIS 17487, 1992 WL 350743 at *5* (summary judgment for defendant on § 1985(3) claim for plaintiffs' failure to produce any evidence of discriminatory intent).

### C. § 1986 Claim

*Section 1986* provides, in pertinent part, that

> every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in *section 1985* of this title, are about to be committed, and having power to prevent or aid in [**35]** preventing the commission of the same neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages cased by such wrongful act . .

42 U.S.C. § 1986.

Courts within this Circuit have interpreted § 1986 as "'merely giving a remedy for misprision of a violation of 42 U.S.C. § 1985.'" *Levy v. City of New York, 726 F. Supp. 1446, 1455 (S.D.N.Y. 1989)* (quoting *Williams v. St. Joseph Hospital, 629 F.2d 448, 452 (7th Cir. 1980)); Spencer v. Casavilla, 717 F. Supp. 1057, 1062 n.1 (S.D.N.Y. 1989)*. Thus, since plaintiff Woo has failed to state a claim under § 1985, defendants, a fortiori, are entitled to summary judgment dismissing Woo's § 1986 claim. *See, e.g., Dacey v. Dorsey, 568 F.2d 275, 277 (2d Cir.), cert. denied, 436 U.S. 906, 98 S. Ct. 2238, 56 L. Ed. 2d 405 (1978); Thornton v. City of Albany, 831 F. Supp. at 981-82* ("Having held that plaintiff's § 1985(3) cause of action must be dismissed, the court also must, a fortiori, dismiss plaintiff's § 1986 claim."); *Levy v. City of New York, 726 F. Supp. at 1455*.

### IV. THE [**36]** CITY'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S RESPONDEAT SUPERIOR CLAIM IS DENIED BECAUSE FACTUAL ISSUES REMAIN

Plaintiff Woo's fifth cause of action asserts common law liability by the City for the actions of the defendant police officers under the doctrine of respondeat superior. (*See* Cplt. PP 68-70.) "Although respondeat superior [does] not apply to the § 1983 claims, 'plaintiff's common-law causes of action may proceed on a theory of respondeat superior.'" *Mendoza v. City of Rome, New York, 872 F. Supp. 1110, 1119 (N.D.N.Y. 1994)* (quoting *Johnson v. Town of Colonie, 102 A.D.2d 925, 925, 477 N.Y.S.2d 513, 514 (3d Dep't 1984)*).

Because the Court has granted the summary judgment motions of defendants Harrop, Daly and McGuinness as to all claims, the Court considers only the City's respondeat superior liability as to Diskin's alleged assault and battery of Woo. *See Johnson v. Town of Colonie, 102 A.D.2d at 925, 477 N.Y.S.2d at 514* ("the wrong of the servant serves as the basis of liability of the master to the injured party.") (quoting *Geltzer v. Russell, 49 A.D.2d 823, 824, 373 N.Y.S.2d 566, 568 (1st Dep't 1975)*).

In order for the [**37]** City to be liable under the doctrine of respondeat superior for Officer Diskin's conduct, plaintiff Woo must establish that Diskin was acting "in furtherance of the duties he owes to his employer and where the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities." *Perez v. City of New York, 1996 U.S. Dist. LEXIS 2812, 94 Civ. 2061, 1996 WL 103836 at *2 (S.D.N.Y. 1996)* (citing *Lundberg v. State of New York, 25 N.Y.2d 467, 470, 306 N.Y.S.2d 947, 950, 255 N.E.2d 177 (1969)*). If Diskin's "'conduct is brought on by a matter wholly personal in nature, the source of which is not job-related, his actions cannot be said to fall within the scope of his employment.'" *Perez v. City of New York, 1996 U.S. Dist. LEXIS 2812, 1996 WL 103836 at *2* (quoting *Stavitz v. City of New York, 98 A.D.2d 529, 531, 471 N.Y.S.2d 272, 274 (1st Dep't 1984)*).

A police officer is empowered to use only such force as is reasonably necessary to make an arrest. *N.Y. Penal Law § 35.30(1)* (McKinney 1987). An arresting officer who uses excessive force will be liable for assault and battery. *See, e.g., Jones v. State of New York, 33 N.Y.2d 275, 280, 352 N.Y.S.2d 169, 172, 307 [**38]** N.E.2d 236 (1973)* (citing cases).

In assessing the City's liability for Officer Diskin's conduct under a respondeat superior theory, the issue is whether Diskin's alleged assault and battery was "in the course of the officer's employment or outside it, to accomplish a purpose foreign to it." *Perez v. City of New York, 1996 U.S. Dist. LEXIS 2812, 1996 WL 103836 at *2* (quoting *Mott v. Consumers' Ice Co., 73 N.Y. 543, 547 (1878)*).

If Officer Diskin is found by the jury to have used excessive force, the jury will need to decide if he used that force pursuant to his obligation to the Police Department, or for personal reasons. There is conflicting factual evidence as to: who started the incident, whether plaintiff Woo or defendant Diskin violated traffic regulations, whether Woo assaulted Diskin with a tire iron and whether Diskin identified himself as a police officer. The Court finds that whether Officer Diskin acted within the scope of his employment or because of a personal traffic confrontation during his confrontation with plaintiff Woo is a disputed question of fact for the jury to determine. [11] *See, e.g., Gallose v. Long Island Railroad Co., 878 F.2d 80, 84 (2d Cir. 1989)* [*39] ("Normally, whether an employee is acting within the scope of employment is a question 'to be resolved by the jury from all the surrounding circumstances.'") (quoting *Powers v. New York Central R.R., 251 F.2d 813, 816 (2d Cir. 1958)*); *Tenczar v. Richmond, 172 A.D.2d 952, 953, 568 N.Y.S.2d 232, 233 (3d Dep't 1991)* ("Because an employee's 'scope of employment is heavily dependent on factual considerations, the question is ordinarily one for the jury."); *Perez v. City of New York, 1996 U.S. Dist. LEXIS 2812, 1996 WL 103836 at *3-4* (summary judgment denied as to respondeat superior claim against City because fact dispute existed as to whether police officer acted in furtherance of any duty he owed the City or purely personal reasons); *Frazier v. State of New York, 64 N.Y.2d 802, 803, 486 N.Y.S.2d 919, 920, 476 N.E.2d 318 (1985)* (same).

11    The City produced a Police Department Legal Bureau Bulletin dated March 5, 1987 about indemnification for off-duty arrests. (Dunn-Jones Reply Declaration, dated 4/19/96, Ex. AA.) That Bulletin notified officers of Corporation Counsel's position that the City will not represent or indemnify an officer who is sued as a result of an arrest or altercation arising from an off-duty traffic infraction because "enforcing traffic regulations off-duty generally is not within the scope of a New York City police officer's employment. Rather, the Corporation Counsel's position is that the off-duty officer used police authority improperly to resolve what was really only a personal matter." (*Id.* at p. 3.) While this memorandum indicates that Officer Diskin will have difficulty prevailing on the cross-claim, it is not enough, by itself, to entitle the City to summary judgment on the cross-claim.

[*40]  **V. THE CITY'S MOTION TO DISMISS DEFENDANT DISKIN'S CROSS-CLAIM FOR INDEMNIFICATION AS PREMATURE IS DISMISSED**

The City next moves to dismiss Defendant Diskin's cross-claim for indemnification against the City on the grounds that (1) this Court does not have jurisdiction to hear the cross-claim, (2) the cross-claim is premature, and (3) Diskin's actions were not within the scope of his employment. (City Br. at 30.) Since the Court has already determined that whether Diskin's actions were within the scope of his employment is a question for jury resolution (*see Section IV, above*), the Court will address the City's remaining two arguments.

**A. This Court Has Jurisdiction to Hear the Indemnification Cross-Claim**

New York General Municipal Law ("GML") § 50-k(2) requires the City of New York to represent an employee in any proceeding which arises from

> any alleged act or omission which the corporation counsel finds occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency at the time the alleged act or omission occurred.

Thus, [*41] pursuant to GML § 50-k(2) and 50-k(3), the Corporation Counsel may decide not to represent an employee if he finds that the employee violated any rules or regulations or was not acting within the scope of his or her employment. [12]

12    GML § 50-k(3) states:

> The City shall indemnify and save harmless its employees in the amount of any judgment obtained against such employees . . . provided that the act or omission from which judgment or settlement arose occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency at the time the alleged damages were sustained; the duty to indemnify and save harmless . . . shall not arise where the injury or damages resulted from the intentional wrongdoing or recklessness on the part of the employee.

The employee may challenge the Corporation Counsel's decision not to represent him or her under Article 78 of the New York Civil Practice Law and Rules. [*42] *CPLR § 7803(3); see, e.g., Williams v. City of New York, 64 N.Y.2d 800, 801-02, 486 N.Y.S.2d 918, 919, 476 N.E.2d 317 (1985).*

The City maintains that the issue of whether an Article 78 proceeding is the exclusive means of challenging the Corporation Counsel's determination to deny indemnification has not been directly answered. (City Br. at 31.) The City's research, however, appears to be out of date. In *Harris v. Rivera*, 921 F. Supp. 1058 (S.D.N.Y. 1995), Judge Scheindlin reviewed the statutory language and case law under GML § 50-k and concluded that "[a] city employee may pursue a claim for indemnification by bringing an action in any court that has jurisdiction to hear the claim." *Id*. at 1061. Judge Scheindlin further held that "it is within the Court's discretion to exercise [supplemental] jurisdiction" over the state indemnification cross-claim where, as here, the indemnification cross-claim arises from the same nucleus of operative facts as the federal claims, *i.e.*, here, Diskin's alleged assault on plaintiff Woo. *Id*. at 1061-62. Judge Scheindlin concluded that "judicial economy dictates trying the issues in the same court and to the [*43] same jury," with careful jury instructions to minimize any confusion. *Id*. at 1062. *See also Turk v. McCarthy*, 661 F. Supp. 1526, 1536 (E.D.N.Y. 1987) (defendant police officer's GML § 50-k cross-claims are "tightly interwoven with the federal law issues" and Court therefore exercised pendent jurisdiction over those claims).

This Court agrees with Judge Scheindlin's conclusion that a federal district court has supplemental jurisdiction to hear the indemnification cross-claim where, as here, the federal claim and the cross-claim involve the same common nucleus of operative facts: here, the circumstances and liability resulting from Officer Diskin's alleged assault of Woo. Thus, the Court will exercise jurisdiction over Officer Diskin's cross-claim.

### B. The Indemnification Cross-Claim is Not Premature

The Court also rejects the City's argument that Officer Diskin's indemnification cross-claim is premature. (*See* City Br. at 32-34.)

"Claims for indemnification do not generally ripen until a judgment in the underlying action is paid." *Harris v. Rivera*, 921 F. Supp. at 1062. However, courts have created a broad exception to this rule:

"where indemnification [*44] is asserted in a third-party action . . . for the sake of fairness and judicial economy, the CPLR allows third-party actions to be commenced in certain circumstances before they are technically ripe, so that all parties may establish their rights and liabilities in one action."

*Id*. (quoting *Mars Assoc. v. New York City Educ. Const. Fund*, 126 A.D.2d 178, 191-92, 513 N.Y.S.2d 125, 133 (1st Dep't 1987) (quoting *Burgundy Basin Inn, Ltd. v. Watkins Glen Grand Prix Corp.*, 51 A.D.2d 140, 146, 379 N.Y.S.2d 873, 880 (4th Dep't 1976))).

Judicial economy dictates that Officer Diskin's cross-claim against the City be litigated at the same time as Woo's primary claim. *See, e.g., Geltzer v. Russell*, 49 A.D.2d 823, 824, 373 N.Y.S.2d 566, 568-69 (1st Dep't 1975) (refusing to dismiss defendant police officer's claim for indemnification against the village that employed him). Thus, the City's motion to dismiss Diskin's indemnity cross-claim is denied. [13]

13    Because of this disposition, the Court need not address Officer Diskin's argument that the City's motion to dismiss the cross-claim is untimely under the Court's scheduling orders. (*See* Diskin Br. at 10-11.)

### [*45]  VI. WOO'S NEGLIGENT RETENTION CLAIM ALLUDED TO IN THE PRETRIAL ORDER IS PRECLUDED FOR FAILURE TO PLEAD IT IN ANY COMPLAINT

Finally, the City has moved to preclude plaintiff Woo's "negligent retention" claim referred to in the pretrial order (PTO, Woo Contentions of Fact PP 26-28), but not asserted in Woo's complaint. (*See* City Br. at 23-25; City Reply Br. at 6.)

Plaintiff Woo filed the original and two amended complaints while represented by counsel and filed a third amended complaint (prepared while represented by counsel) after dismissing counsel. Woo has failed even to request leave of court to file a fourth amended complaint, but simply alluded to the "negligent retention" claim in factual contentions in the pretrial order.

The Court agrees with the City that, at this late date, when discovery is complete and the case essentially is trial ready, it would greatly prejudice the City to allow plaintiff Woo to pursue such a claim. Therefore, plaintiff Woo will not be permitted to pursue this unpled claim at trial. [14]

14    Because of this disposition, the Court need not reach the City's argument that the claim must be dismissed because it was not referred to in Woo's Notice of Claim against the City. (*See* City Br. at 23-25.)

### [*46] CONCLUSION

For the foregoing reasons, this Court grants summary judgment for defendants Harrop, Daly and McGuinness on all claims. Additionally, the Court grants

summary judgment to defendant Diskin on Woo's *§ 1981* and *§ 1985(3)* claims and the *§ 1983* claim for false arrest and malicious prosecution. The Courts grants summary judgment for the City on Woo's *§ 1983 Monell* claim. The Court, however, denies summary judgment as to the state law respondeat superior claim against the City and defendant Diskin's cross-claim for indemnification against the City.

For the convenience of the parties, especially pro se plaintiff Woo, the Court summarizes the claims that remain in the case, as follows:

. The first cause of action, for assault -- against defendant Diskin.

. The second cause of action, for battery -- against defendant Diskin.

. The fifth cause of action, for respondeat superior -- against the City.

. The seventh cause of action, for *§ 1983* liability -- against defendant [*47] Diskin, limited to excessive force.

All claims except those listed directly above, are no longer in the case.

A further pretrial conference will be held on September 11, 1996 at 10:30 a.m. in Courtroom 20D (500 Pearl Street).

SO ORDERED.

Dated: New York, New York

August 12, 1996

Andrew J. Peck

United States Magistrate Judge