# COPY OF TRANSCRIPT

1

UNITED STATES DIRSTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - x
JIMMY INNOCENT,

                    Plaintiff,

          -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT and unknown Police
Officers "JOHN DOE A-Z", individually
and in their capacities as Police
Officers of the NYC Police Department,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - x

                    65 Broadway
                    New York, New York

                    May 6, 2008
                    1:55 p.m.

        **DEPOSITION** of **THE NEW YORK CITY POLICE**

**DEPARTMENT**, the Defendant in the above-entitled

action, by **OFFICER BRIAN MOORE**, held at the

above time and place, pursuant to Notice, taken

before Risa Karr, a shorthand reporter and

Notary Public within and for the State of New

York.

                              LEX#67317



LEX
REPORTING SERVICE, INC.
Professional Reporting Since 1980
Offices throughout New York and New Jersey  •  Toll Free 800-608-6085

B. Moore                                    24

1

2       A       Yes.

3       Q       What was your basis for your

4    conclusion that you had probable cause to

5    arrest Mr. Innocent?

6       A       I'm sorry, can you repeat it?

7       Q       What was the basis for your

8    conclusion that you had probable cause to

9    arrest Mr. Innocent?

10      A       I believe I testified before he

11   was found to be trespassing, there were

12   weapons and marijuana in the same building,

13   same vicinity he was in.

14      Q       Let's take a step back.  When you

15   say there were weapons and marijuana in the

16   same vicinity in the building he was in, can

17   you be more be specific when you use the term

18   vicinity?

19      A       Within the same enclosed space.

20      Q       Is there a specific distance when

21   you use the term vicinity?

22              MS. SCHARFSTEIN:  Objection.

23      A       Approximate.

24      Q       When you say vicinity, are you

25   talking a distance of five feet, ten feet or

1                          B. Moore                    25

2    some other distance?

3         A      When I talk about vicinity in

4    particular?

5         Q      Yes, with regard to this

6    particular instance, you said that there were

7    guns and drugs within the vicinity of Mr.

8    Innocent.

9                     MS. SCHARFSTEIN:  Objection.

10        A      I didn't say that.

11        Q      Correct me.  Tell me what you did

12   say.

13        A      Weapons and drugs.

14        Q      You didn't use the term vicinity?

15        A      Within the vicinity of Mr.

16   Innocent.

17        Q      My question is when you say within

18   the vicinity of Mr. Innocent what do you mean

19   by that?

20        A      Vicinity is an approximation of

21   distance.

22        Q      What is your approximation of

23   distance when you use the term vicinity?

24        A      Vicinity is a broad term.

25   Approximation is specific.  We can get into

1                    B. Moore                    26

2     defining words.  I'm trying to answer your

3     question the best that I can.  If you can ask

4     me a specific question.

5          Q     I'm trying to understand when you

6     said there were weapons and drugs within the

7     vicinity of Mr. Innocent.

8          A     Yes.

9          Q     I'm trying to understand when you

10    say within the vicinity what do you mean by

11    that?

12         A     My definition of vicinity?

13         Q     As it relates to this particular

14    instance.

15                    MS. SCHARFSTEIN:  Objection.

16         A     For clarification purposes are you

17    asking me the approximate distance of the

18    weapons and drugs to Mr. Innocent?

19         Q     Right.  In terms of your usage of

20    the term vicinity, when you say vicinity I

21    guess that is my question.  What distance are

22    you saying the weapons and drugs were in

23    relation to Mr. Innocent?

24                    MS. SCHARFSTEIN:  If you are

25                    not sure of the question ask him

B. Moore                                27

2      to clarify it.

3      A      Are you asking me my definition of

4  vicinity?

5              MS. SCHARFSTEIN:  It is the

6              attorney's job to ask the

7              question.

8      A      I don't understand the question.

9      Q      The question is -- are you asking

10  for my definition of vicinity?  Let's take a

11  step back.  Is it fair to say you effected the

12  arrest of Mr. Innocent?

13      A      Yes.

14      Q      Would it also be fair to say you

15  effected the arrest because there were weapons

16  and drugs within the vicinity of Mr. Innocent;

17  is that correct?

18      A      Yes.

19      Q      You also said you next effected

20  the arrest because you believe he was

21  trespassing?

22      A      Yes.

23      Q      With regard to your use of the

24  word vicinity, my question is when you use

25  that term as it related to Mr. Innocent could

B. Moore                    28

2    you give me the distance that the weapons and

3    drugs were to Mr. Innocent?

4                    MS. SCHARFSTEIN:  How far

5                    away were they from the weapons --

6                    MR. PRESTON:  If he doesn't

7                    understand.

8        A        I don't understand your question.

9        Q        When you use the term vicinity

10   what do you mean by that?

11       A        I use it as an umbrella term which

12   one would go back and tell the specific for

13   specifics.

14       Q        Why don't we talk about the

15   approximation in terms of distance as it

16   relates to the weapons and drugs and Mr.

17   Innocent.

18                   MS. SCHARFSTEIN:  Objection.

19               Go ahead.

20       Q        My question is where were the

21   drugs and weapons in relation to Mr. Innocent?

22                   MS. SCHARFSTEIN:  Objection.

23       A        Are you asking for a specific -- I

24   don't understand the question again.  Maybe

25   you could narrow it down for me.

B. Moore                          29

MR. PRESTON:  I have to take

a ten-minute break to call this

judge.

(Whereupon, a recess was

taken at this time.)

Q    I was asking questions earlier

about your testimony which you said that there

were weapons and drugs in the vicinity of Mr.

Innocent.

What is your basis for the

conclusion there were weapons and drugs in the

vicinity of Mr. Innocent?

MS. SCHARFSTEIN:  Objection.

A    Would you rephrase the question?

Q    Sure.  I'm asking upon what facts

do you rely upon to form the conclusion there

were weapons and drugs in the vicinity of Mr.

Innocent?

MS. SCHARFSTEIN:  Objection.

A    I'm trying to think of how best to

answer your question.

Q    Sure.  Do the best you can.

A    Can you repeat it for me, please?

Q    Upon what facts do you rely to

```
 1                          B. Moore                    30
 2      support your statement that there were drugs
 3      and weapons in the vicinity of Mr. Innocent?
 4                  MS. SCHARFSTEIN:  Objection.
 5          A      Okay.  I can see weapons, I can
 6      see a defendant.
 7          Q      When you say a defendant, are you
 8      referring to Mr. Innocent?
 9          A      In this particular case, Mr.
10      Innocent, and they are in the vicinity of each
11      other.
12          Q      You said you can see weapons.  Did
13      you also say you can see drugs?
14          A      At this point I see weapons.
15          Q      You said they were within the
16      vicinity of Mr. Innocent.  Now where did you
17      see that?
18          A      The arrest location.
19          Q      Where was that?
20          A      If I can refer to my notes I can
21      tell you the exact address.
22          Q      Before we try to get the exact
23      address was it at a specific location at that
24      address?
25          A      In regards to?
```

B. Moore                    31

1

2      Q      Your statement when you say you

3   see weapons and you see a defendant.

4      A      Yes, there is a specific location.

5      Q      Where at the address, the arrest

6   location, did you see the weapons and the

7   defendant?

8      A      The second floor.

9      Q      Describe to me the second floor.

10             MS. SCHARFSTEIN:  Objection.

11     A      It appears to be a storage area.

12     Q      Do you have an idea about how big

13   the storage area is?

14     A      It would be an approximation.  I

15   could be off by quite a distance.

16     Q      Give me your best approximation.

17     A      Again, this is just a guess, an

18   approximation, roughly the second floor is

19   maybe 20 feet by --

20             MS. SCHARFSTEIN:  You can't

21             guess because that doesn't help

22             anyone.  If you can give a

23             reasonable approximation then you

24             can give an answer, but only you

25             can decide if you can do that.

B. Moore                    32

A       I don't want to give you an exact
guess or approximation because I could be far
off.  So as far as the dimensions of the
building?

Q       No.  We are talking about the
second floor.

A       Right, but the second floor is the
same as the first floor as far as the
dimensions.  The building was built straight
up and down.

Q       So I understand, is it your
testimony that the size of the room is the
dimension of the building?

                MS. SCHARFSTEIN:  Objection.

Q       I'm trying to ascertain --

A       I'm trying to tell you I can't
give you an exact approximation without
possibly being off and I can't recall exactly
and I never knew the exact dimension of the
building.

Q       Could you describe where you saw
the weapons in the second floor?  Let's take a
step back.  Does the second floor have rooms
or is it just an open space?

B. Moore                          33

1

2       A      There is, from what I remember,

3   one room within a larger room.

4       Q      Where is that room within the

5   larger room?

6       A      Towards the back of the building.

7       Q      Towards of the building?

8       A      Back of the second floor.

9       Q      Does that room have a door on it?

10      A      Yes.

11      Q      When you enter the second floor

12  was that door open or closed?

13      A      It was open.

14      Q      Who was in that room, do you

15  recall?

16      A      I recall there was an individual

17  there.  If I can refer to my notes I can give

18  you an exact person.

19      Q      Do you recall whether Mr. Innocent

20  was in that room?

21      A      No.

22      Q      He was not in that room?

23      A      At the time I was there?

24      Q      Yes.

25      A      No.

B. Moore                              34

1

2    Q     Where did you observe Mr. Innocent?

3    A     On the second floor.

4    Q     Where on the second floor?

5    A     Approximately in the middle of the

6    second floor.

7    Q     The middle of the second floor.

8    Could you give me an approximation as to how

9    far he was from the room when you first

10   observed him?

11   A     Approximately give or take some

12   feet, ten to fifteen.

13   Q     Ten to fifteen feet from the room?

14   A     Yes.

15   Q     You said you also observed weapons?

16   A     Yes.

17   Q     Where did you observe the weapons?

18   A     I observed weapons on what

19   appeared to be a desk on the second floor.

20   Q     Where was the desk in relation to

21   the room?

22   A     Which room?

23   Q     You said there was only one room

24   on the second floor.

25   A     So not the second floor in

1                          B. Moore                    35

2      general.

3             Q      Is there more than one room on the

4      second floor?

5             A      No.   There is one room on the

6      second floor.

7             Q      You said there was a desk that you

8      observed weapons; was that on the second

9      floor?

10            A      Yes, it was.

11            Q      Was that inside the room you

12     observed this desk?

13            A      No, it was not.

14            Q      Where did you observe the desk in

15     relation to the room?

16            A      Outside of the room against the

17     wall.

18            Q      Of the room?

19            A      Correct.

20            Q      Mr. Innocent in relation to the

21     desk, how far was he from the desk?

22            A      It is going to be another

23     approximation.

24            Q      I understand.

25            A      Roughly ten to fifteen feet.

1                          B. Moore                        36

2          Q      What was Mr. Innocent doing when

3    you observed him, when you first observed him?

4          A      He was laying motionless on the

5    floor.

6          Q      This was, again, ten to fifteen

7    feet from the room and ten to fifteen feet

8    from the desk?

9          A      Approximately, an approximation,

10   yes.

11         Q      Do you have an approximation as to

12   how tall Mr. Innocent is?

13         A      Between five and six feet.

14         Q      Would it be fair to say that when

15   you observed Mr. Innocent laying down that the

16   room was not within his reach?

17                      MS. SCHARFSTEIN:   Objection.

18         A      Define within his reach.

19         Q      From where he was laying down

20   could he reach the room if he stretched his

21   arm out?

22         A      No.

23         Q      Would the same answer be the case

24   that where he was laying down at would he be

25   able to reach the desk if he stretched his arm

B. Moore

66

1

2      A      Correct.

3      Q      The first time?

4      A      Correct.

5      Q      Where did you observe the weapon?

6      A      Where?

7      Q      Yes.

8      A      Which weapon?

9      Q      When you were there on June 25th

10   how many weapons did you observe?

11     A      From what I can remember, three.

12     Q      Where did you observe the weapons?

13     A      I observed two weapons, from what

14   I remember, on the desk.

15     Q      Where was the desk at, and is this

16   the desk you are referring to in this picture?

17     A      The top right photograph is the

18   desk.

19     Q      You said you observed two weapons

20   on the desk?

21     A      Correct.

22     Q      On top of the desk?

23     A      Yes.

24     Q      Where was the desk at?

25     A      On the second floor of the

B. Moore                          67

building.

Q        Where?

A        Towards the back of the room.

Q        Towards the back of what room?
Remember there is a room within a room.

A        The larger room.

Q        When you say the larger room where
was the desk in relation to the room within
the room?

A        Is it from what I remember.  I
don't believe you can tell from the
photograph.  It was next to the wall which
separated one room from the other.

Q        So the desk was next to the wall
of the room within the room, correct?

A        Yes.

Q        When we were talking earlier about
the table, are you referring to the desk
that's depicted in this picture?

A        I don't remember saying table.

Q        My question is when we were
talking about Mr. Innocent being ten to
fifteen feet away, were you referring to this
desk or were you referring to a table?

B. Moore                           68

A     I was referring to the desk.

Q     You observed two guns on this desk?

A     No.

Q     I misunderstood your testimony. What did you observe on the desk?

A     A switch blade and at least one other knife.  I don't remember the exact type.

Q     Did you observe any other weapons when were you there on June 25th?

A     Yes.

Q     What did you observe and where did you observe it at?

A     I observed a handgun.

Q     Where did you observe it?

A     That weapon was found in the second room.

Q     That's the room within the room?

A     The room within the room.

Q     Where was it found in the room within the room?

A     Inside of a green ammo box.

Q     Was the ammo box closed?

A     No.

B. Moore                          69

1

2          Q       It was open?

3          A       Correct.

4          Q       Where was the green ammo box

5     within that room?

6          A       You walk into the room, on the

7     left-hand side when you walk in.

8          Q       What was there on the left-hand

9     side?

10         A       The ammo box.

11         Q       Was it on the floor or was it on a

12    desk?

13         A       I don't remember exactly.

14         Q       Who was in that room when you

15    observed that green ammo box?

16         A       Defendants.  If I can refer to my

17    notes I can tell you specifically.

18         Q       Do you know whether Mr. Innocent

19    was in that room?

20         A       Yes.

21         Q       In the room within a room?

22         A       I know where he was.

23         Q       My question is when you saw the

24    green ammo box was Mr. Innocent in that room

25    where the green ammo box was?

```
1                        B. Moore                    71

2    photograph.

3         Q     Let me have you take a look at

4    this.

5                    MR. PRESTON:  We will mark

6                    it as Plaintiff's 3 and mark this

7                    as Plaintiff's 4.

8                    (Documents were marked as

9                    Plaintiff's Exhibits 3 and 4, for

10                   identification, as of this date.)

11        Q     Take a look at Plaintiff's 3.

12        A     Okay.

13        Q     Can you identify what has been

14   marked as Plaintiff's 3?

15        A     Yes, I can.

16        Q     What is that?

17        A     It is a property clerk invoice.

18        Q     For who?

19        A     For the police department.

20        Q     Relating to who?

21        A     A prisoner name Innocent, Jimmy.

22        Q     Is this a document that you

23   prepared?

24        A     Yes.

25        Q     Is this based upon information you
```

B. Moore                                    72

1

2       gather after searching Mr. Innocent?

3            A     Yes.

4            Q     Would this reflect the results of

5       your search of Mr. Innocent?

6            A     Yes.

7            Q     Other than what is reflected here

8       would there be anything else that you found on

9       Mr. Innocent's person when you searched him?

10           A     I would have to refer to my notes

11      to be sure.

12           Q     If there was something else would

13      it be reflected on this document?

14           A     No.

15           Q     Why not?

16           A     This is a document collecting

17      money.  The money goes on separate documents

18      than other items.

19           Q     I will have you take a look at

20      what has been marked Plaintiff's 4.  Can you

21      identify what has been marked as Plaintiff's

22      4?

23           A     Yes.

24           Q     What is Plaintiff's 4?

25           A     Affidavit in Support of Search

```
 1                    B. Moore                    73

 2    Warrant.

 3         Q        Who prepared this document?

 4         A        Assistant district attorney.

 5         Q        Is this a document that you

 6    reviewed?

 7         A        Yes.

 8         Q        Is this a document that you

 9    reviewed prior to signing?

10         A        Yes.

11         Q        When you reviewed it was this

12    document accurate?

13         A        I believe so.

14         Q        Let's start at paragraph 6.  Take

15    a look at paragraph 6.  Just look at the first

16    sentence.  Actually, why don't you read all of

17    paragraph 6 and then I will ask you questions

18    about it.  Okay?

19         A        Okay.

20         Q        You had a chance to finish that

21    paragraph?

22         A        Yes.

23         Q        Let's start with you were at 31

24    West 138th Street, correct, on June 25th?

25         A        Yes.
```

1                         B. Moore                    74

2         Q      How did you get there?

3         A      By car.

4         Q      Who were you there with?

5         A      In the car?

6         Q      Yes.

7         A      My partner.

8         Q      Why were you there?

9         A      We were driving down the street.

10        Q      You were driving down the street

11   and what did you observe?

12        A      Observed an individual was

13   standing in front of a commercial

14   establishment.

15        Q      Was he outside or inside?

16        A      Outside.

17        Q      What, if anything, did you observe

18   beyond that?

19        A      I observed an individual inside

20   the commercial establishment.

21        Q      What did you do after that point,

22   the observation of the two individuals?

23        A      Went upstairs.              .

24        Q      You were in a car and you said you

25   were with your partner?

1                    B. Moore                    75

2          A    The officer I was working with.

3          Q    Who was that?

4          A    Sergio Marino.

5          Q    You were with Officer Marino and

6    you observed two individuals?

7          A    One individual.

8          Q    Then you observed two individuals

9    in a store?

10         A    Correct.

11         Q    Were the lights on or off?

12         A    Off.

13         Q    What did you do at the point where

14   you observed these two individuals?

15         A    Asked them questions.

16         Q    What did you ask them?

17         A    I asked them different questions.

18         Q    Do you recall what you asked them?

19         A    If I can refer to the affidavit.

20         Q    This document here, okay.  Because

21   you don't have an independent recollection of

22   what you asked them, correct?

23         A    Yes.

24         Q    That's why you have to refer to

25   the affidavit, correct?

1                          B. Moore                    76

2         A      Yes.

3         Q      Go ahead.

4         A      Asked an individual standing out

5    front of the commercial establishment do you

6    live around here.

7         Q      Where was Officer Marino when you

8    asked him that?

9         A      He was driving the vehicle behind

10   the wheel of the car.

11        Q      When you asked the question where

12   were you?

13        A      In the car.

14        Q      You were asking him these

15   questions from the car window?

16        A      The question I just read you, yes.

17        Q      What happened at that point, what

18   did he respond?

19        A      Yeah, in here.

20        Q      Then what happened at that point?

21        A      I asked him what floor.

22        Q      He said?

23        A      Second.

24        Q      What happened at that point?

25        A      I asked what apartment.  That's

1                         B. Moore                    77

2      it.

3              Q       What did he say?

4              A       Did not reply.

5              Q       What happened at that point?

6              A       Started to walk away.

7              Q       Who?

8              A       The gentleman I was asking

9      questions.

10             Q       Do you know if either of those

11     gentlemen, the gentlemen you were asking

12     questions to or the gentleman inside the

13     store, were either of those gentlemen Jimmy

14     Innocent?

15             A       No.

16             Q       He started to walk away you said?

17             A       Yes.

18             Q       What happened at that point?

19             A       We exited the car.

20             Q       When you say he walked away, what

21     direction did he walk when he was walking

22     away?

23             A       West.

24             Q       He was walking away from the

25     store?

1                        B. Moore                    78

2          A      Yes.

3          Q      What happened at that point?

4          A      We got out of the car.

5          Q      Okay.  Then what happened?

6          A      Then we got out of the car.  He

7     said why are you bothering me.  You cannot not

8     mess with me.

9          Q      What happened at that point?

10          A      I believe my partner and I noticed

11     keys on the inside of the commercial

12     establishment.

13          Q      In the door?

14          A      In the lock, hanging from the

15     lock.

16          Q      Inside?

17          A      Yes.  I believe my partner or I, I

18     don't recall who, asked whose keys do those

19     belong to, something to that effect, which he

20     responded that's my key.

21          Q      What happened at that point?

22          A      "Defendant started to walk away

23     while yelling something that sounded like John

24     while tilting his head and looking at the

25     second floor of the commercial establishment."

B. Moore                          79

1

2        Q      What was the individual inside the

3    store doing at this point?

4        A      I didn't know there was an

5    individual inside the store.

6        Q      When did you learn there was an

7    individual inside the store?

8        A      When I looked inside the store.

9        Q      At what point did you do that?

10        A      Once we placed the original

11    individual that we stopped in the back seat of

12    our police car.

13        Q      Once you arrested the original

14    individual?

15                MS. SCHARFSTEIN:  Objection.

16        A      Define arrest.

17        Q      What do you define as arrest?

18        A      I have a few definitions.

19        Q      Give me the few definitions you

20    have of arrest.

21        A      To stop.

22        Q      To stop somebody is not an arrest.

23        A      To stop period is an arrest.

24        Q      To stop an individual is an

25    arrest?

1                          B. Moore                    81

2          Q      Tell me what other definition you

3      have for arrest.

4          A      There is the procedural arrest.

5          Q      What does that mean?

6          A      Placing someone in custody and

7      doing arrest paperwork and giving them

8      specific charges.

9          Q      Do you have any other definition

10     of arrest?

11         A      Not at this time.

12         Q      So the individual that you put in

13     the station car, he was under arrest, correct,

14     even by your own definition?

15         A      Yes.

16         Q      What did you do at that point?

17     Let me step back.  You testified at some point

18     the gentleman said the name John and looked up

19     at the second floor?

20         A      Yes.

21         Q      What did you do then?

22         A      We stopped him from walking away.

23     We asked him what he was doing.  He didn't say

24     anything.  We put him in the back seat of the

25     police car.

B. Moore                           82

Q     What did you do at that point?

A     I believe we put over the radio
that we were entering a building.

Q     What did you do at that point?

A     Called for assistance before we
entered the building, at which point we looked
inside the building.  It was open to you.  We
saw another individual who appeared to be
sitting in the building.

Q     Sitting where in the building?

A     Halfway back in the commercial
establishment.

Q     On the first floor?

A     Correct.

Q     What happened at that point?

A     Referring to the notes.  "Asked
the defendant if he lived at the location,
defendant did not respond; did ask if there
was anyone else in the building or upstairs.
This individual said yeah, they are playing a
game."

Q     What happened at that the point?

A     We walked up to the second floor.

Q     How did you get up to the second

1                        B. Moore                    83

2    floor?

3         A      One foot in front of the other

4    upstairs.

5         Q      Elevator, stairs?

6         A      Stairs.

7         Q      Where were the stairs located?

8         A      From what I remember,

9    approximately in the middle of the first

10   floor.

11        Q      Was there a door leading up to the

12   second floor?

13        A      No.

14        Q      So you and Officer Marino

15   proceeded to the second floor?

16        A      Yes.

17        Q      What did you do with the

18   individual that was on the first floor?

19        A      We placed him in handcuffs and had

20   additional officers watch him in front of the

21   location.

22        Q      So prior to you proceeding up the

23   stairs there were other officers on the scene?

24        A      Yes.

25        Q      Do you remember who the other

1                          B. Moore                    84

2      officers were?

3           A      I don't remember.

4           Q      Do you know whether there was any

5      sergeants on the scene?

6           A      At this point in time?

7           Q      Yes.

8           A      No, I don't remember.

9           Q      After leaving this individual with

10     the other officers who proceeded upstairs?

11          A      Officer Marino, myself and there

12     were other officers.  I couldn't tell you.  I

13     don't remember how many or their names.

14          Q      What happened when you arrived on

15     second floor?

16          A      "I saw Officer Marino run, I

17     followed, we had a really strong sent of

18     marijuana from the second floor.  It was dark

19     to the point we needed flashlights."

20     Referring to my notes.  "We observed other

21     individuals appear to be sleeping on the

22     second floor.  They did not respond to us

23     yelling police.  They were not awake." We had

24     to physically wake them.

25          Q      Is that indicated here in the

B. Moore                        85

document you are referring to?

          A        This is from recollection.  We saw

two water pipes, which are devices used for

smoking marijuana on top of the desk in the

second room.  We observed a switch blade knife

on top of the same desk in the second room, 22

caliber ammunition on the top of the same desk

in the back of the room.

          Q        From your recollection, did you

observe anything else on the desk?

          A        Not from my recollection.

          Q        Other than what is here that's all

that was on the desk?

          A        No.

          Q        What else was on the desk?

          A        I would have to refer to my notes.

          Q        What happened at that point?

          A        At that point we were concerned

with any individuals that we could not see in

the room.  It was dark.  There was a room in

the back, a smaller room which had a door open

which was also dark, entered, actually I found

a light switch from what I could recall,

turned on the light switch, defendant appeared

B. Moore                          86

1

2    in that room.

3         Q    Was that Mr. Innocent?

4         A    In the smaller room, no.

5         Q    Okay.

6         A    I observed what appeared to be a

7    gravity knife.

8         Q    This is the individual that's in

9    the back room?

10        A    Yes.  Also observed marijuana in

11   the back room, ammunition box in the back

12   room, large capacity black magazine in the

13   back room with other various calibers of

14   ammunition.

15        Q    In the back room?

16        A    In the back room and a 22 caliber

17   revolver in the back room.

18        Q    What happened at that point?

19        A    The defendant or individual in the

20   back room was asked to exit the room.  He

21   walked out of the room.  I took the gravity

22   knife from his person.  He tried to run back

23   into the back room figuring he was going for a

24   weapon.  We stopped him, at which point he

25   refused to let us place him in cuffs to stop

1                    B. Moore                    87

2    him from going into the back room.

3        Q    What happened at that point?

4        A    At that point we had all

5    individuals in that room on the second floor

6    in handcuffs.  We asked them if anyone lived

7    at the location.

8        Q    Is that indicated in the notes

9    here that you are referring to?

10       A    I do not believe so.  Again, this

11   is referring to the sixth paragraph from

12   before.  This is no longer in the sixth

13   paragraph.

14       Q    If you want you can you can look

15   at the entire document and tell me if you see

16   that in the entirety of this document where

17   you questioned them if they lived at this

18   location.

19       A    I don't see it mentioned in this

20   document.

21       Q    Was that based on your

22   recollection?

23       A    Was what based on my recollection?

24       Q    The testimony you just gave about

25   asking if anybody lived there.

1

2       A     Yes.

3       Q     What happened at that point?

4       A     The individuals were taken from

5    the building, taken to the precinct, processed

6    as arrest.

7       Q     I'm going to hand you a packet of

8    documents that was produced in discovery by

9    the City of New York and you referred to your

10   notes a couple of times earlier.  Can you go

11   through the documents?

12                 MR. PRESTON:  Off the

13                 record.

14                 (Whereupon, a discussion was

15                 held off the record.)

16      Q     Documents that are Bate stamped

17   NYC 0000708 through NYC 000265.

18                 MS. SCHARFSTEIN:  That

19                 couldn't be that packet.  That

20                 packet is way to small to have

21                 more than one hundred pages of

22                 documents.  There must be a gap

23                 somewhere.

24      Q     So the first series is 000078

25   through 000086.  That's the first series.

1                      B. Moore                    96

2      gave?  Are you looking for something specific?

3           Q      Now that you have reviewed the

4      documents I want you to tell me what upon did

5      you rely on in effecting the arrest of Mr.

6      Innocent?

7           A      Of the view of the weapons in

8      proximity to Mr. Innocent.

9           Q      Just so we are clear, you were the

10     arresting officer, correct?

11          A      Yes.

12          Q      Did you rely on anything else

13     other than what you testified to, review of

14     the weapons in proximity to Mr. Innocent to

15     support your arresting Mr. Innocent?

16          A      Yes.

17          Q      What?

18          A      Defendant's statement.

19          Q      Defendant's statement, who?

20          A      Innocent's statement.

21          Q      What were those statements?

22          A      I can't recall specifically, but

23     when asked if he lived in the building he said

24     no.

25          Q      Other than view of the weapons in

```
1                      B. Moore              97
2     proximity to Mr. Innocent, and the statement
3     he didn't live in the building, was there any
4     other basis for the arrest of Mr. Innocent?
5          A    Yes.
6          Q    What?
7          A    An individual on the same floor
8     ran when he saw the police, another individual
9     within the same floor possessed a weapon.
10    Totality of circumstances, which I provided.
11         Q    Other than the circumstances that
12    you just articulated, was there any other
13    basis that you had that supported your
14    conclusion to arrest Mr. Innocent?
15         A    No.
16         Q    That was it?
17         A    Yes.
18         Q    With regard to the individual you
19    said possessed the weapon, that individual who
20    was the individual in the back room, correct?
21         A    Yes.
22         Q    That was the guy you testified had
23    the gravity knife?
24         A    Yes.
25         Q    With regard to the individual that
```

B. Moore                                  98

1

2  you said tried to run when they saw you, was

3  that individual also the individual in the

4  back room?

5      A    No.

6      Q    Who was that individual, do you

7  know?

8      A    I don't remember.

9      Q    Do you recall where that

10 individual was when you entered the room?

11     A    I didn't see him when initially

12 entered the room.

13     Q    When you say do you know what he

14 was running from?

15     A    We yelled police.  Officer Marino

16 was in front of me going up the stairs.  I can

17 only infer he ran from Officer Marino.

18     Q    You don't know where he started

19 running from, correct?

20     A    It would have to be from a spot

21 you couldn't see the officers.  I don't know

22 specifically where.

23     Q    How about with regard to, you said

24 the view of the weapons in proximity to Mr.

25 Innocent.

1                          B. Moore                    99

2          A      Correct.

3          Q      When you say in proximity to the

4   weapons, are you referring to the weapons that

5   were in the back room?  When you say view of

6   the weapons in proximity to Mr. Innocent, are

7   you referring to the weapons in the back room?

8          A      As far as --

9          Q      I asked you about the basis for

10  why you arrested Mr. Innocent and you said due

11  to the fact you said in view of the weapons

12  that were in proximity to Mr. Innocent and I'm

13  asking you what weapons are you referring to?

14         A      The weapons on top of the desk.

15         Q      How about the weapons in the back

16  room?

17         A      At that point in time, no.

18         Q      So the weapons in the back room

19  did not form a basis for your arrest of Mr.

20  Innocent, correct?

21         A      I don't understand forming a

22  basis.

23         Q      When you arrested Mr. Innocent and

24  you said you arrested him based upon the

25  weapons that were in proximity to Mr. Innocent

B. Moore                          100

1

2     I'm asking you what weapons are you referring

3     to?  Are you referring to any weapons that

4     were in the back room?

5          A     As far as the basis for his

6     arrest?

7          Q     Correct.

8          A     No.

9          Q     We are talking about only the

10    weapons that were on the desk, correct?

11         A     For the basis for his arrest?

12         Q     Yes.

13         A     Yes.

14         Q     He was charged with possession of

15    marijuana?

16         A     Yes.

17         Q     What was the basis for the charge

18    of possession of marijuana?

19         A     The devices on the desk which

20    contained marijuana.

21         Q     The devices that were on the desk

22    that you said, what were those devices?

23         A     Water bongs.

24         Q     Did those water bongs have

25    marijuana in it?

1

2      A      Residue.

3      Q      Do you know?

4      A      I would have to refer to notes.

5      Q      What notes would you have to refer

6   to?  There is the arrest report, this

7   affidavit, there is also the warrant

8   affidavit.  Would any of those help you in

9   answering the question?

10     A      I don't know if the water bongs

11  were sent to be tested for marijuana.

12     Q      Do you know whether the water

13  bongs served as a basis for the charge of

14  criminal possession of marijuana against Mr.

15  Innocent?

16              MS. SCHARFSTEIN:  Objection.

17     Q      Do you understand the question?

18     A      No.

19     Q      With regard to the charge of

20  criminal possession of marijuana, upon which

21  facts did you rely in charging Mr. Innocent

22  with criminal possession of marijuana?

23              MS. SCHARFSTEIN:  Objection.

24     A      Which facts?

25     Q      Yes.  What information did you

B. Moore                          102

1
2    rely?
3         A     That there was marijuana on the
4    second floor.
5         Q     Where?
6         A     There was marijuana inside of
7    water bongs.
8         Q     Your testimony is you believe
9    there was marijuana inside the water bongs but
10   you are not sure?
11              MS. SCHARFSTEIN:  Objection.
12        A     No.
13        Q     No what, you are not sure?
14        A     That wasn't my testimony.
15        Q     Do you know whether there was
16   marijuana inside the water bongs?  Do you
17   know?
18        A     I would have to have a report that
19   said it was tested positive in order to say I
20   knew there was marijuana.
21        Q     In charging Mr. Innocent with
22   criminal possession of marijuana did you base
23   it on the water bongs?
24              MS. SCHARFSTEIN:  Objection.
25        A     Could you rephrase the question?

B. Moore                              103

    Q     I will ask it again.  With regard
to the charge of criminal possession of
marijuana, what facts did you base it on?
What facts did you base the criminal
possession of marijuana?

            MS. SCHARFSTEIN:  Objection.

    Q     Or what information?

    A     That we found marijuana, over a
pound, on the second floor of the building.

    Q     Where did you find that marijuana?

    A     Inside the room within the room.

    Q     This is the back room?

    A     Yes.

    Q     Did you rely on any other
information in charging Mr. Innocent with
criminal possession of marijuana other than
what you just told me about?

            MS. SCHARFSTEIN:  Objection.

    A     Can you repeat?

    Q     Did you rely upon any other
information as the basis to charge Mr.
Innocent with criminal possession of
marijuana?

            MS. SCHARFSTEIN:  Objection.

```
 1                        B. Moore                104

 2          A       If there was no marijuana, a pound

 3    or more inside the --

 4          Q       You tell me about the marijuana in

 5    the room.  My question was there any other

 6    information that you relied upon in charging

 7    Mr. Innocent with criminal possession of

 8    marijuana other than what you told me?

 9                  MS. SCHARFSTEIN:  Objection.

10          Q       If the answer to that question is

11    no, that's fine.

12          A       I don't understand the question of

13    basis.

14          Q       Mr. Innocent was charged with

15    criminal possession of marijuana, correct?

16          A       Yes.

17          Q       There had to be some fact or facts

18    upon which there was a reliance in coming to

19    the conclusion that he criminally possessed

20    marijuana, correct?

21                  MS. SCHARFSTEIN:  Objection.

22          A       What do you mean by fact?

23          Q       Or information.  There had to be

24    some information upon which there was the

25    basis for charging Mr. Innocent for criminal
```

                              B. Moore                    105

 1    possession of marijuana; isn't that correct?

 2         A     Yes.

 3         Q     My question is what information

 4    was it?

 5         A     I saw marijuana.

 6         Q     Right.  Where?

 7         A     In the room within the room.

 8         Q     I understand your testimony to be

 9    that.  My question is did you see marijuana

10    any other place that formed the basis for your

11    conclusion that Mr. Innocent criminally

12    possessed marijuana?

13                   MS. SCHARFSTEIN:  Objection.

14         A     Rephrase the question.

15         Q     Other than the marijuana you saw

16    in the room was there any other marijuana that

17    formed the basis of your conclusion that Mr.

18    Innocent criminally possessed marijuana?

19                   MS. SCHARFSTEIN:  Objection.

20         A     Basis.

21         Q     Or information that you relied

22    upon in charging Mr. Innocent with criminal

23    possession of marijuana?

24                   MS. SCHARFSTEIN:  Objection.

1                      B. Moore                    106

2          Q      Do you understand the question?

3          A      Yes.  The answer is yes.

4          Q      What other information did you

5    have?

6          A      Proximity to the marijuana.

7          Q      Again, we are talking about the

8    marijuana in the back room, correct?

9          A      Yes.

10         Q      Other than the marijuana in the

11   back room, did he have proximity to any other

12   marijuana on the second floor?

13                MS. SCHARFSTEIN:  Objection.

14         A      I believe I already answered this.

15         Q      Well, just to clarify.

16         A      Ask me again.

17         Q      Other than the marijuana in the

18   back room, did Mr. Innocent have proximity to

19   any other marijuana on the second floor?

20         A      Yes.

21                MS. SCHARFSTEIN:  Objection.

22         Q      Where was that?

23         A      Inside the water bong.

24         Q      Other than the water bong, did Mr.

25   Innocent have any proximity to any other

1                          B. Moore                    107

2     marijuana on the second floor?

3          A     At that time, no.

4          Q     How about the charge of possession

5     of firearm; what firearm are you referring to?

6          A     Which firearm are you referring

7     to?

8          Q     According to the arrest report

9     there is a reference to a firearm.  Which

10    firearm are you referring to?

11         A     According to the arrest report I'm

12    referring to the firearm found in the second

13    room, the room within the room.

14         Q     How about with regard to

15    possession of a weapon in the third degree.

16    What weapon are you referring to?

17         A     The weapon, the gravity knife.

18    Sorry, that's incorrect.  I believe it is a

19    switch blade, which is on the desk of the

20    bigger room.

21         Q     Let me have you take a look at the

22    second page of Plaintiff's Exhibit 5, which is

23    NYC 0000081, third full paragraph.

24         A     Okay.

25         Q     Do you see where it says deponent?

B. Moore                        108

1    That would be you, correct?

2         A    Yes.

3         Q    It says deponent observed on the

4    second floor a switch blade knife; do you see

5    that?

6         A    Yes.

7         Q    That switch blade knife, is that

8    the knife you referred to as being on the

9    desk?

10        A    Yes.

11        Q    Then is says you observed ten

12   rounds of 22 caliber ammunition.

13        A    Yes.

14        Q    Where was that at?

15        A    Approximately ten rounds and it

16   was on the same desk as the switch blade.

17        Q    How about the three water pipes?

18        A    I don't recall specifically where

19   each water pipe was recovered from.

20        Q    You don't recall specifically.  Do

21   you recall where any of the water pipes were?

22        A    They were all in that greater

23   room.

24        Q    Were they on the desk or not?

```
1                        B. Moore                    109
2           A     I don't recall specifically.
3           Q     Do you recall whether any of them
4      were on the desk?
5           A     I'm sorry?
6           Q     Do you recall whether any of the
7      water pipes were on the desk?
8           A     I don't recall.
9           Q     Do you recall whether any of the
10     water pipes were within reaching distance of
11     Mr. Innocent?
12          A     I don't recall.
13          Q     Who's Police Officer Lugo?
14          A     He is an officer that worked at
15     the 32.
16          Q     What is his involvement with this
17     matter, do you know?
18          A     I believe he helped conduct the
19     search warrant.
20
21                     (Continued on next page to
22                     accommodate jurat.)
23
24
25
```